STRIPLIN COTTON CO. *v.* MILLER *et al.*

[94 South. 226.   No. 22782.]

AFFIDAVITS.   *Trial.   Affidavit of landlord as to lien to secure advances
not conclusive; where evidence conflicting, issue should be sub-
mitted to jury.*

Where a tenant farmer placed with a cotton dealer certain cotton
upon which there was a landlord's lien, and secured advances
without disclosing to the cotton dealer the existence of the lien,
and afterwards, in a settlement with the landlord, an affidavit
of the landlord is taken as to his lien and so forth, such affidavit
is not exclusive evidence of what happened at the time between
the parties; and where the evidence is conflicting as to what
actually took place, the issues should be submitted to the jury,
and it is error to grant a peremptory in such case.

APPEAL from circuit court of Alcorn county.

HON. C. P. LONG, Judge.

Suit by E. W. Miller and another against the Striplin
Cotton Company.   From a judgment in the circuit court
confirming a judgment in the justice court for plaintiffs,
defendant appeals.   Reversed and remanded.

*W. C. Sweat,* for appellant.

The court below said that Kitchens, the landlord, had
a perfect right to sell the cotton for his rent, but he based
his ruling on the ground that the landlord had not actually
sold the cotton, but had only sold his one-fourth to Strip-
lin.   Striplin testifies that he sold all the cotton to him;
but however that may be, conceding for the sake of ar-

gument that the landlord only sold him his one-fourth, he waived his lien in favor of Striplin as is shown by the affidavit. Then Striplin had all the rights in the cotton that the landlord had and had a perfect right to close it out at the market price, which the record shows was done. And if that was done, the plaintiff has no right to complain.

The court below held that the landlord, Kitchens, would have a perfect right to sell his cotton for rent, but that the affidavit was the only evidence of what happened between the landlord and Striplin, and that this showed that Striplin only bought one-fourth of the cotton. Conceding for the sake of the argument that the court was right in this, the affidavit shows that Striplin paid Kitchens for his one-fourth of the cotton and that Kitchens, the landlord, waived all his rights in the cotton in favor of Striplin. This being the case, Striplin then had all the rights in the cotton which the landlord prior to that time had.

The bookkeeper's testimony shows what happened between Striplin and the landlord when the landlord was paid for his one-fourth interest in the cotton and whether the landlord actually sold him his one-fourth interest and waived his lien on the other in favor of Striplin would make no difference. The testimony all shows that the cotton was closed out by the Striplin Cotton Co. on that date. The request for peremptory instruction asked by Miller should have been overruled and the peremptory instruction requested by the defendant, Striplin Cotton Co. should have been granted. The peremptory instruction granted to Kimmons & Walker for twenty-seven dollars and twelve cents should have been overruled. The proof by the plaintiff shows that he carried to Kimmons & Walker, one hundred dollars, but asked them to allow him to keep twenty dollars of it, which they consented to do, that he would have paid the other twenty dollars if they had asked him. Since they had an opportunity to get this money and did not do so they cannot now call on Striplin for it. The only amount they were entitled to recover, if any at all, against Striplin, was seven dollars and

twelve cents and the peremptory instruction for twenty-seven dollars and twelve cents was erroneous. For these reasons we say the court below committed error and the cause should be reversed and judgment entered here for the Striplin Cotton Co.

*Ely B. Mitchell,* for appellees.

Striplin Cotton Company says that they bought three bales of cotton from Kitchens. Kitchens denies this, and states that he only sold them his one-fourth interest in the cotton. It so happened that Striplin Cotton Company had J. F. Kitchens make an affidavit before they would pay him anything for his rent as landlord. This affidavit is set out in full on page 54 of this record. This affidavit sets out the fact: "That Striplin Cotton Company has this date paid him, Kitchens, the affiant the sum of eighty dollars to cover his one-fourth interest in and to said cotton."

It is not disputed that Striplin Cotton Company sold this cotton soon after the compress receipts were turned over to them. Miller did not know that Striplin Cotton Company was going to sell his cotton. Striplin Cotton Company told Miller that he could come back and sell his cotton at any time. Miller believed that when he got ready to sell his cotton, he could come back to Corinth and sell his identical three bales of cotton, pay Striplin Cotton Company the one hundred fifty dollars and interest and the remainder of the amount received for the three bales of cotton would be his.

"The title to the crops raised by one man on another man's farm depends largely if not entirely upon the contract between the two men." "If the contract amounts to a lease or demise of the land by the owner to the occupier, then clearly the crops belong to the occupier, whether he pays rent in money, or in kind by share of the crops." 24 Cyc. page 1469.

The title of the three bales of cotton was in Miller, and he alone had a right to sell this cotton. When Striplin

Cotton Company sold his cotton without the consent of Miller, they converted the cotton of Miller to their own use. It is well settled that there is a conversion for which trover will lie, where there has been an unlawful sale o the property of another, by one who assumes to be the owner, or acting for the owners, or one who acts on behalf of a person other than the owner. 26 R. C. L., sec. 30, page 1119.

"Any sale unauthorized by law or the consent of the owner which deprives him of his personal property is an actionable conversion." 38 Cyc. page 2026. It may be possible the court made an error in finding that Striplin Cotton Company only owed Miller ninety-eight dollars and twenty-eight cents, but the appellant can't complain of this because that is in his favor and for his benefit and not for his injury.

Where a defendant agreed to gin and bale plaintiff's cotton for one-third of it, and under this contract he got possession of it and converted it for his own use, without complying with his contract, he was held liable for the highest market price of the cotton between the time of the conversion and that of the trial. *Fulton* v. *Woodburn,* 40 Miss. 593.

Since Striplin Cotton Company committed themselves by an affidavit to what took place between them and J. F. Kitchens when they paid Kitchens eighty dollars, they cannot now come into court and deny the facts stated in the affidavit, but they must stick to this written affidavit which contains the trade between Kitchens and Striplin Cotton Company.

This affidavit nowhere states that Kitchens sold the three bales of cotton to Striplin, but the strongest language used in this affidavit is that he was paid eighty dollars to cover his one-fourth interest in and to the cotton. If Kitchens sold one-fourth of the cotton to Striplin Cotton Company, then Striplin Cotton Company owned one-fourth and Miller owned three-fourths of the cotton, but the Striplin Cotton Company had converted all of this

cotton for their own use long before the affidavit was drawn up and they should not be allowed to come into court and deny that they converted this cotton to their own use. The action of the trial court should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The Striplin Cotton Company were cotton dealers at Corinth, Miss., and E. W. Miller was a farmer and J. W. Mincy was a trustee in a deed of trust given by Miller to a firm of merchants. Miller was a renter from one Kitchens, and on the land so rented grew three bales of cotton. On October 12, 1920, Miller placed with the Striplin Cotton Company two bales of cotton, and on November 3, a third bale, and procured an advancement of one hundred fifty dollars from the Striplin Cotton Company on said cotton, under an agreement that Miller could sell the cotton when he desired. Miller did not disclose to the Striplin Cotton Company that there were any liens against the cotton, but there was a landlord's lien and also a deed of trust in favor of Kimmons & Walker in which Mincy was named as trustee. After this advancement was made, cotton declined in the market, and the Striplin Cotton Company demanded of Miller that he put up a margin to make the cotton safe security for the money advanced. This Miller declined to do, and the Striplin Cotton Company told him they would sell the cotton unless he did so, which Miller defied them to do. This conversation occurred in January, 1921.

Nothing was done about the matter until some time in April, when Kitchens, the landlord, got busy about his rent. Finally Kitchens got the cotton receipts from Miller and carried them to the Striplin Cotton Company and demanded settlement for the balance of his rent, amounting to eighty dollars. At the time of this demand the cotton was worth less than the amount advanced and the eighty dollars. The Striplin Cotton Company paid off the landlord's claim, claiming that they bought the entire three bales of cotton and were delivered the receipts at said

time. This was disputed by Kitchens, who claimed that he only sold his one-fourth interest in the three bales of cotton at the said time. An affidavit however was taken by the Striplin Cotton Company from Kitchens, reading as follows:

"Personally appeared before me, W. L. Madden, chancery clerk in and for said county and state, J. F. Kitchens, who being by me first duly sworn, says on oath that for and during the year of 1920 one E. W. Miller was a tenant on his place in said county and state, and that he was the landlord of the said E. W. Miller for said time and of said place, and that the said Miller raised on the leased premises which he had leased from affiant for the year 1920 three certain bales of cotton, being numbered as follows by their tag numbers, viz.: Nos. 2841, 89812, and 88836, weighing respectively, 502, 565, and 563 pounds, the same being the three bales of cotton deposited with the Striplin Cotton Company by the said E. W. Miller, without my knowledge or consent, on the 10/23/20, and affiant further states that he was due as and for rent from the said E. W. Miller one-fourth of said three bales of cotton, and that he had a landlord's lien for said rent; and he further states that the said Striplin Cotton Company has this day paid to him, the affiant, the sum of eighty dollars, to cover his one-fourth interest in and to said cotton, and hereby waives in favor of the said Striplin Cotton Company any and all claims which he may have against said cotton for either rent or supplies furnished said tenant."

In the fall of 1921, cotton having advanced, Miller and the trustee in the deed of trust brought suit against Kitchens and the Striplin Cotton Company for the price at which cotton was then selling, alleging a conversion of the cotton by the Striplin Cotton Company and Kitchens, claiming a balance of ninety-four dollars and twenty-five cents against the Striplin Cotton Company. The judgment in the justice court was for the Striplin Cotton Company. An appeal was taken to the circuit court. The Striplin Cotton Company filed an offset claiming a balance due it by

Miller of twenty-two dollars and eight cents. On appeal there was a peremptory instruction for the plaintiffs, the trial court refusing to submit the case to the jury on the conflict in the evidence, upon the theory that the affidavit taken at the time of the transaction between Kitchens and the Striplin Cotton Company was the exclusive evidence of the transaction, and that the affidavit showed that Kitchens only sold a one-fourth interest in said cotton, and judgment was rendered accordingly.

We do not think the affidavit is a contract, or that it was intended as a memorandum in writing of a contract between the said parties. It is on its face a mere affidavit stating facts or purported facts by Kitchens. The evident purpose of taking this affidavit was to have Kitchens' testimony or to have an affidavit from him supporting his claim to be used as a basis of a criminal proceeding or some other coercive proceeding against Miller, and certainly was not conclusive of what happened at the time, because it is not signed by Striplin Cotton Company, nor does it appear to contain any agreement whatever between such parties. In our opinion the cause should have been submitted on the conflict in the evidence on the proper instructions for the jury to determine the issue between the parties.

The judgment will therefore be reversed, and the cause remanded.

*Reversed and remanded.*