Marshall, C. J.
 

 All of these cases were heard together before the Utilities Commission and they have been heard together on review in this court. They involve orders of the public utilities commission on applications of motorbus transportation companies, all of which cover the same identical streets and highways, and between the same termini.
 

 On September 30, 1921, the commission granted to Edward A. Carley a certificate to operate from Fountain Square in the city of Cincinnati to a point in the city of Norwood; said city being contiguous to the city of Cincinnati. Carley has continuously operated over that route in compliance with the order of the commission. On May 21, 1925, he made application for an extension of the route from the northern terminus in Norwood, through the villages of Silverton, Deer Park, Rossmoyne, and Blue Ash, to Montgomery. These villages are not contiguous to each other, nor to the cities of Cincinnati and Norwood. This applica
 
 *622
 
 tion for extension was protested by the Cincinnati Traction Company, which operates a rail traction service from Fountain Square, Cincinnati, northwardly along a portion of the route originally certificated to Carley, and also along a portion of the route covered by the later certificate applied for by Carley. This protest is on the ground that the granting of the certificate would by competition impair the efficiency of that company’s operation. The Pennsylvania Railroad Company also operates commuter train service throughout a part of the territory, but that company filed no protest, and is content with the protest filed by the traction company. Edwin G. Becker, as receiver of the Cincinnati Motor Bus Company, protests on the ground that Carley is not financially able, or provided with sufficient or suitable equipment, to render the service, and that his equipment is mortgaged in an amount in excess of that permitted by law. Becker, as receiver, also files an application on his own behalf to operate over the same route covered by the extension applied for by Carley; this application being filed on May 28, 1925. Henry H. Staley, another protestant, files an application stating that he was operating this same route on April 28, 1923, when the motorbus law went into operation, and therefore asks for a certificate of convenience as of right. Bernard Drees protests and also claims that he is entitled to a certificate to operate over the same route because on November 26, 1924, the' commission granted his application covering that route; but it appears that Drees never received his certificate, and never operated the route,
 
 *623
 
 and that in April, 1925, the commission summoned him to show cause why the order in his favor should not he revoked. Without answering that summons he began to operate on June 4,1925.
 

 The commission overruled the various protests, denied the applications of Becker and Staley, revoked the order of Drees, and granted the application of Carley.
 

 The case was heard on June 10, 1925, which was 20 days after Carley’s application was filed. The order was made on July 13, 1925, and the certificate of convenience and necessity issued on July 23, 1925.
 

 Several important legal questions are presented by this record. Upon hearing the testimony the commission found that there was a convenience to be served and a necessity for the operation, and evidence is found in the record in abundance to support that finding.
 

 The protestants Becker, Staley, and Drees, are in no. position to complain of that finding upon the facts, because each of those protestants desired to operate a motor service over the same route. The Cincinnati Traction Company is likewise at some disadvantage, because that company does not offer to serve the entire route covered by this application for extension. The evidence shows that it is a rather thickly populated district, and we find no grounds for reversing the order of the commission upon the point of necessity for service.
 

 The first legal question presented arises upon a • motion filed by Staley, and a similar motion filed by the Cincinnati Traction Company, challenging
 
 *624
 
 the jurisdiction of the commission to hear the application for extension, on the ground that on June 15, 1925, Sections 614-84 (111 Ohio Laws, p. 512), and 614-86, General Code, (111 Ohio Laws, p. 19), went into effect, which denied to the commission jurisdiction over all motor transportation “used for the transportation of persons or property, or both, and which are operated exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous thereto.”
 

 It is conceded that the original certificate in favor of Carley was entirely within the city of Cincinnati and city of Norwood, which is contiguous thereto. The commission overruled this motion to the jurisdiction, and we think the commission was right in so doing.
 

 The motor service between Norwood and Montgomery is concededly an interurban service. The cities of Cincinnati and Norwood have no jurisdiction over such a service, having no power to establish, deny, or regulate such service. If the application did not designate the extension as a continuation of the route now being operated by them, but was simply an independent application for service extending from Norwood to Montgomery, no question would be made as to the jurisdiction of the commission. We think it is immaterial to inquire whether such interurban service is to be operated in connection with an intracity service or independently of such service. It appears that the application was made before the amendments
 
 *625
 
 to Sections 614-84 and 614-86 became effective, but that additional fact is not necessary to give the public utilities commission complete jurisdiction over a route which is in every sense interurban.
 

 The next question arising in this proceeding relates to the revocation of the order whereby Drees was awarded a certificate. The original order was made November 26, 1924, and he was awarded a certificate to operate between Kennedy Heights and Montgomery. He was notified of this order on December 3, 1924. No certificate was in fact issued. Drees claims never to have received notification that a certificate was authorized. Drees never paid taxes, and never filed any insurance papers, and on April 4, 1925, was cited to appear before the commission and show cause why the authorization should not be revoked. He received that order, but did not appear in person, and contented himself with writing a letter stating that he would operate if he were relieved from paying taxes. He did not attempt to operate until after the application was filed by Carley, on May 21, 1925. On hearing, the authority of Drees to operate was revoked. Drees contends that by reason of having made an irregular tender of his taxes and expressed willingness to comply with the statutory provisions for liability insurance, on June 2, 1925, and having at the same time written a letter to the commission expressing his desire and willingness to comply with every order of the commission regarding the type of service, his former omissions of duty should be overlooked, and that he should be placed in the category of an operator
 
 *626
 
 charged with not giving “convenient and necessary-service in accordance with the order of the commission,” and therefore be entitled to 60 days time within which to provide such service before any existing certificate could be canceled. We find no merit in this contention, but on the contrary affirm the views of the commission that his dereliction was that of having utterly failed to comply with the law and the orders of the commission in the matter of rendering service for the period prior to June 2, 1925; that to such dereliction the 5 days notice under Section 614-87 applies. The 60-day time for furnishing additional service only applies where the operator is conducting his business in accordance with the statutory requirements but the service is not adequate to the needs of the community to be served. Drees takes the wholly untenable position that his dereliction prior to June 2, 1925, should not be held to be grounds of revocation, because other persons were giving the community all the transportation service which was reasonably necessary. The record further shows that citizens interested in the service had tried to persuade Drees to operate and that he had refused. Section 614-87 confers specific authority upon the commission to revoke a
 
 certificate
 
 upon 5 days notice. This section is ample authority for revoking the
 
 authorisation
 
 of a certificate. Having failed to pay the tax and to comply with the provisions as to insurance, and having failed to take out a certificate, or to operate until after being cited, the order of the commission is both reasonable and lawful.
 

 
 *627
 
 The next question arises upon the application of Staley. Staley claims that he was operating in good faith on April 28, 1923. He did not, however, file an affidavit stating that fact until May 27, 1925, which was 25 months after the date of the passage of the motor transportation statute. There is testimony in the record to the effect that he had ceased to' operate over a portion of that route as early as August, 1923. He even notified the commission that he would abandon his operation, and published notice to that effect. Staley began to operate over the route covered by the application of Carley about a week before the hearing in this case, which was subsequent to the date of Carley’s application. Staley’s situation is the more clearly indefensible because he had been operating other motorbus routes under affidavit, and had secured certificates from the commission authorizing the same. His neglect to do so in this particular instance must be held to indicate an abandonment.
 

 There is an important legal question in connection with Staley’s application, which arises out of an amendment to Section 614-87, General Code, which amendment was passed on May 2, 1925. When Section 614-87 was originally passed, granting to persons then operating the right to file an affidavit and thereafter operate as a matter of right, no limitation of time was placed upon the filing of such affidavit. The amendment which was passed May 2, 1925, provided:
 

 “But no certificate shall be granted upon any such affidavit unless the same shall have been filed
 
 *628
 
 prior to the passage of this act” (meaning May 2, 1925).
 

 It has been held by this court in
 
 Patterson Foundry & Machine Co.
 
 v.
 
 Ohio River Power Co.,
 
 99 Ohio St., 429, 124 N. E., 241, that the passage of an act refers to the date of the signing of the bill by the Governor, or the expiration of 10 days from the time the bill was presented to the Governor, if not signed by him. The amendment to Section 614-87, in fixing a limitation upon the time for filing an affidavit, is not retroactive in the sense of affecting rights and transactions which were fully consummated prior to May 2, 1925. The original enactment of Section 614-87 did not give to motor-bus operators who were then operating the unqualified right to continue to operate free from regulation. It only provided that, upon the filing of an affidavit setting forth certain facts, a certificate should be issued to them as a matter of right. As a part of the certificate, however, and as a necessary concomitant thereto, certain regulations and requirements were imposed upon the holder of the certificate, among which were the requirements of paying • taxes, carrying liability insurance, and other regulatory matters. If Staley had pursued his business uninterruptedly, and had given service above criticism, he would still be derelict under the law, and would be guilty of many omissions provided by other sections of the statutes equally obligatory upon him. It was therefore clearly within the power of the Legislature to provide, as it did in the amendment of Section 614-
 
 *629
 
 87, that unless the affidavit were filed, and other statutory conditions fully complied with, prior to a certain fixed date, the rights which were originally guaranteed to him would no longer be his as a matter of right, but that he should then become subject to the other requirements of filing an application as a new operator. The bill was passed by the Legislature on April 17, 1925. It was presented to the Governor on April 21, 1925. It was neither approved nor disapproved by the Governor, and its passage must therefore date from May 2, 1925. Staley’s affidavit, being filed on May 27, was therefore 25 days laté.
 

 Another application passed upon at the same time was- that of Edwin G. Becker, as receiver of the Cincinnati Motorbus Company. Becker was in much the same position as Carley; his application being for an extension of a route theretofore operated by him. Becker’s application was denied, and Carley’s application was granted. Both applications covered practically the same route and it was the province of the commission to determine whether there was any convenience to be served, and, if so, whether more than one operator should be certificated, and, if the commission determined that only one should be certificated, it was the province of the commission to make the selection. This branch of the case therefore presents the same problem as was solved by this court in the case of
 
 Royal Green Coach Co.
 
 v.
 
 Pub. Util. Comm.,
 
 110 Ohio St., 41, 143 N. E., 547, and it was there decided :
 

 
 *630
 
 “Where there are more applicants for certificates of convenience and necessity to operate a motorbus line over a particular route between fixed termini than the public convenience and necessity require, and the Public Utilities Commission upon hearing issues a certificate of public convenience and necessity to such number of the applicants as it finds the public convenience and necessity require, and denies a certificate as to the other applicants, this court will not disturb such order, unless it affirmatively appears from the record that the order is unreasonable or unlawful.”
 

 The commission, having heard all the evidence, decided that one operation was sufficient and chose Carley rather than Becker as the one best qualified to conduct the transportation service. Having examined the record, we find nothing which would justify a reversal of the commission’s findings.
 

 The last question for determination is whether the order of the commission in granting a certificate to Carley was just and lawful and supported by the testimony. Much that has heretofore been said in this opinion deals with this question, and it only remains to be stated that an examination of the record shows an abundance of evidence as to the need of the service and the desirability of awarding a certificate/to Carley in order that there might be continuous service between Montgomery on the north and Fountain Square, Cincinnati, on the south.
 

 The only legal question which seriously challenges our attention is that of service of the notice of the application of Carley. The notice was regu
 
 *631
 
 larly served in every way, bnt only 20 days elapsed from the time of the first publication until the hearing. The statute governing the matter of notice is in the following language, which is quoted from Section 614-91, General Code:
 

 “The applicant shall give notice of the filing of such application by publication made once a week for three weeks immediately prior to the day set for said hearing, in a newspaper of general circulation published at the county seat of each county in or through which the applicant proposes to operate, or in one newspaper published in and of general circulation throughout the territory in or through which the applicant proposes to operate.”
 

 The question arises whether three full weeks must elapse before the hearing, or whether the hearing can take place at any time after the insertion of the third publication. Section 11295, General Code, makes provision for service of summons by publication. That statute is in the following language:
 

 “The publication must be made for six consecutive weeks, in a newspaper printed in the county where the petition is filed.”
 

 Section 11985, General Code, fixes the time of hearing of a divorce suit in the following language:
 

 “The cause may be heard and decided after the expiration of six weeks from the service of summons, or the first publication of notice.”
 

 Other similar statutes are found, governing the sale of real estate and bonds. It will be seen that there is some difference in language between Section 614-91 and other statutes. The difference is
 
 *632
 
 not sufficient to justify a different interpretation. This court has never passed upon this question, but
 
 nisi prius
 
 courts have dealt with the question, and in construing other statutes have held that each week means seven full days. The courts of other states have construed similar statutes and the majority of those cases hold that where a notice is required to be published once a week for a certain number of weeks the full number of days to constitute the required number of weeks must elapse between the first publication and the happening of the event of which such notice is given, and that publication once in each of the required number of weeks is not sufficient unless the full number of days has elapsed. We think this is the safer rule and should be followed in proceedings under Section 614-91, General Code. In this particular proceeding, however, it appears that the parties were present before the commission, and no complaint was at that time made that they were not ready for hearing, or that they were deprived of any evidence which could have been secured by having more time, and no protestant has appeared complaining that he had no opportunity to be heard because of the hearing taking place less than 21 days after the date of the first publication. If any of those elements were present in this case, we should hold that the order of the commission was invalid. Under the circumstances as shown by this record the protestants will not be heard to complain of the failure to technically comply with the provisions of the statute.
 

 The conclusions we have reached on this branch
 
 *633
 
 of the ease are not in conflict with the well-settled and properly determined practice of the trial courts not to hear divorce cases until after the expiration of six full weeks from the service of summons or the first publication of notice. Section 11985 refers to the time of hearing and is a separate and distinct statute from that which governs service.
 

 Finding no errors in the orders of the commission, the orders must be affirmed.
 

 Orders affirmed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.