At the outset of this opinion, attention is directed to the universally recognized principle that a court has nothing to do with the policy or wisdom of a statute. That is the exclusive concern of the legislative branch of the government. When the validity of a statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power.
In recent years, legislation in the form of teachers tenure acts has been enacted by a number of states for the protection of those established and qualified in the teaching profession and to prevent their arbitrary dismissal. Such legislation bears a resemblance to the older civil service laws, and the general constitutionality of teachers tenure acts has been upheld by the courts as a valid exercise of legislative power. 110 A. L. R., 791, annotation; 113 A. L. R., 1495, annotation; 127 A. L. R., 1298, annotation.
Speaking of the Alabama "Teacher Tenure Act," the court remarked in the case of Board of Education of Marshall County
v. Baugh, 240 Ala. 391, 395, 199 So. 822, 825: *Page 439 
"The very laudable purpose of this act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the 'vicissitudes of politics' or the likes or dislikes of those charged with the administration of school affairs.
"Such being the manifest purpose of the act it should be liberally construed in favor of the teachers, who constitute the class designated to be its primary beneficiaries."
As concerns the pending controversies, the first proviso in Section 7690-2, General Code, is of controlling significance. It reads:
"Provided, however, that on or before September 1, 1941, a continuing contract shall be entered into by each board of education with each teacher holding a professional, permanent, or life certificate who, at the time of the passage of this act, is completing five or more consecutive years of employment by said board."
Plainly, the quoted language imports that if a teacher holding the kind of certificate designated is completing five or more consecutive years of employment by any board of education at the time of the passage of the act, he or she is entitled to the tender of a continuing contract of employment by such board on September 1, 1941, the effective date of the act, or within a reasonable time thereafter.
The next matter of inquiry is: What date marks the passage of the act? As has already been observed, the law was enacted by the General Assembly on May 15, 1941, was approved and signed by the Governor on June 2, 1941, and became effective on September 1, 1941.
In 25 Ruling Case Law, 796, Section 44, the following statement appears:
"The taking effect of an act is a different thing from its passage or enactment. * * * in ordinary usage the passage of an act is well understood as *Page 440 
that time when it is stamped with the approval of the requisite vote of both houses in the constitutional manner, signed by the presiding officer of each house, and approved by the chief executive * * *. But its going into effect * * * means its becoming operative as a law."
This statement corresponds with the views expressed by this court and by other authorities. See, Patterson Foundry Machine Co. v. Ohio River Power Co., 99 Ohio St. 429,124 N.E. 241; Cincinnati Traction Co. v. Public UtilitiesCommission, 113 Ohio St. 618, 150 N.E. 81; State, ex rel.City Loan. Savings Co., v. Moore, Clerk, 124 Ohio St. 256,258, 177 N.E. 910; Jemison v. Town of Ft. Deposit, 214 Ala. 471,108 So. 397; State v. Williams, 173 Ind. 414,90 N.E. 754, 140 Am. St. Rep., 261, 21 Ann. Cas., 986; Moree v. State,130 Miss. 341, 94 So. 226; Cordiner v. Dear, 55 Wn. 479,104 P. 780; 1 Lewis' Sutherland on Statutory Construction (2 Ed.), 308, Section 172.
Therefore, the court is of the opinion that the phrase "at the time of the passage of this act" appearing in the third paragraph of Section 7690-2, General Code, means and was intended to mean the date when the act was approved by the Governor, viz., June 2, 1941.
Next suggesting itself is the question: Who is a teacher completing five or more consecutive years of employment at the time of the passage of the act? Under Section 7689, General Code, the school year begins on July 1st of each calendar year and terminates on June 30th of the succeeding calendar year. The fair and sensible answer to the propounded question is that a teacher who was completing five or more consecutive years of service within a reasonable time before or after June 2, 1941, or within a reasonable time before or after the termination of the school year 1940-1941 in a particular school district, would come within the intendment of the law. *Page 441 
Under such interpretation, all four of the teachers herein were completing five or more consecutive years of service when the act was passed.
It is earnestly contended by the respondents that the first proviso of Section 7690-2, General Code, is unconstitutional, being violative of Section 28, Article II of the Constitution of Ohio, prohibiting the passage of retroactive laws or laws impairing the obligation of contracts. We cannot agree. As we view it, such proviso does no more than designate the class entitled to continuing contracts on the effective date of the act, and is therefore not retroactive in effect. Teachers'Tenure Act Cases, 329 Pa. 213, 233, 197 A. 344, 356. CompareState, ex rel. Evans, v. Dudley, 1 Ohio St. 437, 442. Clearly, the General Assembly possesses the power to prescribe the system of education which shall prevail throughout the state, and in pursuance of such authority may direct those agencies created by it, viz., the various boards of education, to enter into continuing contracts with qualified teachers, terminable for cause. Such legislation has uniformly been held not to offend constitutional inhibitions against interference with the freedom of contract. Ratcliff v. Dick Johnson School Twp.,204 Ind. 525, 185 N.E. 143; 110 A. L. R., 792.
This disposes of the propositions common to all four of the pending causes, and establishes: (1) That the phrase "at the time of the passage of this act," as employed in the first proviso of Section 7690-2, General Code, means the date upon which the act was approved and signed by the Governor,viz., June 2, 1941; (2) that the first proviso of Section 7690-2, General Code, applies to a certificated teacher who was completing five or more consecutive years of employment within a reasonable time before or after June 2, 1941, or within a reasonable time before or after the termination of the school year 1940-1941 in any school *Page 442 
district, and that all of the relators herein were completing such terms of service; and (3) that Section 7690-2, General Code, is not unconstitutional as violative of Section 28, Article II of the Constitution.
In the Oscar M. Bishop case, two additional reasons are advanced as to why he should not succeed in his action. First, it is urged that since the Mt. Orab Village School District has an average daily attendance of less than 800 pupils, relator cannot claim the benefit of the first proviso of Section 7690-2, General Code. From an analysis of that part of the section relating to school districts of under 800 pupils and embracing subdivisions a, b, c and d, we are satisfied that it has reference only to beginning teachers, new teachers, and to their reemployment, and does not affect the relator, Bishop. Second, it is claimed that Bishop may not demand a contract for the year 1941-1942 because the board of education did not employ any other teacher to take his place for that year. In our view, this makes no difference. Bishop qualified for a continuing contract under the mandatory terms of the first proviso of Section 7690-2, General Code, and the board was under the duty to tender it. If in a future year or years enrollment in the district should decrease, or any of the other conditions should occur as enumerated in Section 7690-7, General Code, and reduction in the teaching staff should be deemed necessary for any of those reasons, such reduction would have to be made in conformity with the directions of the section.
In the John W. Creig case, the respondent board of education refused Creig a continuing contract because of its rule denying employment to teachers who had reached the age of sixty-five years. Such rule cannot override the statute. As has already been emphasized, a teacher who qualifies as to certification and continuous years of service had to be offered a continuing contract *Page 443 
on or soon after September 1, 1941, and that regardless of any prior rule or agreement to the contrary. Under Section 7690-1, General Code, a continuing contract available to a certificated teacher shall remain "in full force and effect until the teacher resigns, elects to retire, or is retired pursuant to Section 7896-34 of the General Code, or until it is terminated or suspended as provided in this act * * *." Under Section 7896-34, General Code, a teacher cannot be compelled to retire until he or she becomes seventy years old. Consequently, the Board of Education of the Cleveland City School District was without authority to deny the relator, Creig, a continuing contract on the ground that he had reached the age of sixty-five years.
Much of what has been said in connection with the Creig case
is applicable to the Louella Brown case. Relatrix Brown qualified as a teacher entitled to a continuing contract under the first proviso of Section 7690-2, General Code. Her marriage was without significance, the law making no distinction between married and unmarried teachers. However, if a board of education has a rule against the employment or retention of married female teachers, and it should decide to attempt to discharge the holder of a continuing contract because of marriage, the situation would then come within the provisions of Section 7690-6, General Code, and the question presented would then be whether marriage constitutes "other good and just cause" for terminating the contract. That question is not now before the court, and no opinion is expressed thereon.
It follows that writs of mandamus will issue in causes Nos. 28834 and 28918; the demurrer to the answer is sustained in cause No. 28849, and the writ allowed, and in cause No. 28916 the judgment of the *Page 444 
Court of Appeals is reversed and the case remanded to that court with directions to issue the writ.
 Writs allowed in causes Nos. 28834, 28849 and 28918.
 Judgment reversed and cause remanded in cause No. 28916.
WEYGANDT, C.J., TURNER, WILLIAMS, MATTHIAS and HART, JJ., concur.
BETTMAN, J., not participating.