OPINION
Appellant Michael Yoder is appealing the decision of the Stark County Court of Common Pleas that granted summary judgment on behalf of Appellee Greensteel Corporation ("Greensteel"). The following facts give rise to this appeal.
On December 16, 1996, appellant injured his right hand when it got caught in large steel rollers, of an industrial lamination machine, while employed at Greensteel. The accident occurred when appellant assisted a co-worker in cleaning the lamination machine. In order to clean the rollers, of the lamination machine, an employee had to wipe down the heated rollers, by hand, to insure that all of the industrial glue was removed. Greensteel implemented this new method of cleaning the lamination machine after it discovered the silicone coated rollers were cracking and breaking down because they were not being thoroughly cleaned of the industrial glue. Under the old cleaning method, an employee did not have to get his hands near the rollers.
Under the new cleaning method, in order to bypass the kill switch, Greensteel instructed the employees to place a magnet upon it. By placing a magnet on the kill switch, the rollers continued to run even though the shield intended to prevent the employees from reaching into the rollers was up and open. Under this new cleaning method, the employee would wipe down the rollers, as the machine was running, in order to remove all of the industrial glue. On the day of the accident, appellant was cleaning the machine, under the new method, when his hand got caught in the rollers. Appellant's hand went completely through the rollers, up to his lower elbow, causing severe injury.
As a result of this injury, appellant filed a complaint, for intentional tort, against Greensteel, on January 24, 1997. On October 9, 1997, Greensteel filed a motion for summary judgment. The trial court granted Greensteel's motion for summary judgment on April 15, 1998. Appellant timely filed his notice of appeal and sets forth the following assignment of error for our consideration:
 I. RC 2745.01 IS UNCONSTITUTIONAL, AND THEREFORE THE STANDARD WHICH GREENSTEEL ATTEMPTS TO APPLY IS INAPPLICABLE TO THE INSTANT CASE, THE ONLY STANDARD TO BE APPLIED IS THAT ENUNCIATED BY THE OHIO SUPREME COURT IN THE CASE OF FYFFE V. JENO'S, INC.
(1991), 59 OHIO ST.3D 115. UNDER THAT STANDARD, YODER EASILY OVERCOMES SUMMARY JUDGMENT.
 Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard that we review appellant's assignment of error.
 I
Appellant contends, in his sole assignment of error, the trial court erred when it granted summary judgment, on behalf of Greensteel, as R.C. 2745.01 is unconstitutional. Because R.C.2745.01 is unconstitutional, appellant maintains the trial court should have used the standard set forth in Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115. We agree.
 History of Workers' Compensation In Ohio
In 1911, Ohio established the workers' compensation system by the adoption of Section 35, Article II of the Ohio Constitution. Miller, Blankenship v. Cincinnati Milacron Chemical Co: Workers' Compensation and the Intentional Tort, a New Direction for Ohio, (1987), 12 Cap.U.L.Rev. 286. Following the adoption of this constitutional provision, confusion and controversy remained regarding whether an employee could recover for injuries sustained from the intentional acts of his or her employer. Id. However, in 1982, the Ohio Supreme Court, in the case of Blankenship v.Cincinnati Milacron Chemical Co. (1982), 69 Ohio St.2d 608, declared that an injured employee cannot recover, under Ohio's workers' compensation system, for injuries caused by the intentional conduct of his or her employer, but could seek recovery in a common law action. Id.
Two years after the Blankenship decision, the Ohio Supreme Court set forth a test for establishing an intentional tort. SeeJones v. V.I.P. Dev. Co. (1984), 15 Ohio St.3d 90. The Ohio Supreme Court later refined this test in Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100 and Fyffe. The Jones' decision altered intentional tort law by changing "intent", in the employment setting, to mean "substantially certain to occur". TheJones decision also permitted an injured worker to recover under the workers' compensation system and sue his or her employer for an intentional tort. Finally, the Jones decision declared that an employer is not entitled to a setoff of an award from an intentional tort suit in the amount of workers' compensation benefits received. Richey v. The Johnson Hardin Co. (July 17, 1998), Hamilton App. No. C-970767, unreported, at 3-4.
Shortly after the Ohio Supreme Court's decision in Jones, the Ohio General Assembly enacted R.C. 4121.80, effective August 22, 1986, to govern actions alleging torts committed by employers against their employees. Id. at 4. However, in Brady v.Safety-Kleen Corp. (1991), 61 Ohio St.3d 624, the Ohio Supreme Court ruled this statute unconstitutional. Id. The Court found R.C. 4121.80 unconstitutional under Section 34, Article II of the Ohio Constitution.
The General Assembly's most recent response to the Ohio Supreme Court's decisions in this area was House Bill 103, codified in R.C. 2745.01. Id. at 5 This statute went into effect on November 1, 1995. Id. According to Section 3 of House Bill 103, the General Assembly intended to supersede the effects ofBlankenship, Jones, Van Fossen, Fyffe and other related precedents of the Ohio Supreme Court. It is the constitutionality of R.C. 2745.01 that we address in appellant's sole assignment of error.
 R.C. 2745.01 and its Constitutionality
R.C. 2745.01(D)(1) defines "Employment intentional tort" as "* * * an act committed by an employer in which the employer deliberately and intentionally injures, causes an occupational disease of, or causes the death of an employee." Appellant challenges this definition of the statute on the basis that R.C.2745.01 adds another element which a plaintiff must prove in order to recover for an employer intentional tort. A plaintiff must not only prove that the employer intentionally caused injury but also that the employer deliberately caused injury. The General Assembly did not define "deliberately" in the statute.
The General Assembly also addressed the standard a trial court is to apply in employer intentional tort cases in R.C.2745.01(C)(1). This section of the statute provides:
 (1) If the defendant employer moves for summary judgment, the court shall enter judgment for the defendant unless the plaintiff employee or dependent survivors set forth specific facts supported by clear and convincing evidence to establish that the employer committed an employment intentional tort against the employer.
By enacting R.C. 2745.01(C)(1), the General Assembly legislated a clear and convincing standard of proof, in employer intentional tort cases, which conflicts with the summary judgment standard set forth in Civ.R. 56.
In analyzing the constitutionality of the above statute, we find it necessary to follow the Ohio Supreme Court's precedent set forth in Brady. We start with the basic premise that all legislative enactments enjoy a strong presumption of constitutionality. Brady at 631, citing State, ex rel. Dickman v.Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. "When the validity of the statute is challenged on constitutional grounds, the sole function of the court is to determine whether it transcends the limits of legislative power."Brady at 632, citing State, ex rel. Bishop v. Bd. of Edn. (1942),139 Ohio St. 427, 438.
Therefore, our analysis must focus on whether R.C. 2745.01
transcends the limits of legislative power under the Ohio Constitution. In answering this question, it is necessary to review the two sections of Article II that address this area of the law. Section 35, Article II provides, in pertinent part:
 For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.
Section 34, Article II provides that:
 Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the constitution shall impair or limit this power.
Upon careful review of R.C. 2745.01 and Sections 34 and 35 of Article II of the Ohio Constitution, we reach the same conclusion that the Ohio Supreme Court reached in Brady. Section 35, Article II defines the scope and limits of the General Assembly's power in the creation and development of the workers' compensation system. "The [Workers' Compensation] Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability. But the protection afforded by the Act has always been for negligent acts and not for intentional conduct." Blankenship at 614.
Intentional tort injuries, sustained in the workplace, are outside the scope of the purposes intended to be achieved by Section 35, Article II. Brady at 634. "When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim." Id. Section 35, Article II of the Ohio Constitution only addresses injuries that arise from employment. R.C. 2745.01 addresses injuries that arise outside the employment relationship. Therefore, by enacting R.C. 2745.01, the General Assembly exceeded the scope of authority granted to it by Section 35, Article II of the Ohio Constitution. As such, R.C. 2745.01 is void as an improper exercise of legislative power. See Brady at 634, citingTaylor v. Academy Iron Metal Co. (1988), 36 Ohio St.3d 149,162.
"* * * [T]he legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship, because such intentional tortious conduct will always take place outside that relationship." Id. at 634. Because the General Assembly exceeded its scope of authority granted to it under Section 35, Article II, R.C. 2745.01 cannot withstand constitutional scrutiny and is therefore unconstitutional in toto.
We are also concerned with R.C. 2745.01(C) which attempts to control how trial courts rule on motions for summary judgment. This issue was recently addressed in Browning v. N. Gateway Tire,Inc. (1997), 92 Ohio Misc.2d 1. In Browning, the trial court concluded that subsection (C) of R.C. 2745.01 conflicts with Section 5, Article IV of the Ohio Constitution, which is also known as the "Modern Courts Amendment", adopted by the vote of the people in 1968. Id. at 2. "Subsection (B) of that section gives to the Ohio Supreme Court the power to promulgate rules of procedure in all courts of the state. Civ.R. 56, which involves motions for summary judgment * * * [was] adopted pursuant to this section of the Ohio Constitution. To the extent that R.C.2745.01(C) deals with matters dealt with in * * * [Civ.R. 56], it is invalid and of no effect." Id. A statute that specifically conflicts with a Civil Rule is void. Rocky v. 84 Lumber Co.
(1993), 66 Ohio St.3d 221, paragraph two of the syllabus. We agree with this conclusion and find the summary judgment standard contained in Civ.R. 56 applicable as opposed to the standard contained in R.C. 2745.01(C).
Although other jurisdictions have found R.C. 2745.01
unconstitutional on various other grounds, we limit our decision to the above analysis and find it unnecessary to address these other grounds.
 Fyffe Analysis
Having found R.C. 2745.01 unconstitutional, we must now address appellant's claim under the standard set forth in theFyffe case. In Fyffe, the Court explained:
 [I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Fyffe at paragraph one of the syllabus.
Under the above standard, as set forth in the Fyffe case, we find a genuine issue of material fact exists as to whether Greensteel intentionally injured appellant. Steven Clark testified that his supervisor, Bill Patterson, specifically instructed employees to deliberately bypass and disable the safety switch with a magnet. Depo. Steven Clark at 13. This was done despite the specific warnings contained on the machine which stated that the machine should never be operated without the roller shield in place. Depo. Steven Clark at 27-29.
Further, appellant's injury was not the first incident regarding the dangerousness of this machine when the shield was disabled. Steven Clark got his glove caught in the roller once while cleaning the machine, before appellant was injured. Affid. of Michael Yoder. In support of its motion for summary judgment, Greensteel contends appellant was never required to participate in the cleaning procedure. Greensteel maintains appellant was a temporary employee who was only required to operate a forklift and occasionally clean "around" the machine. According to his affidavit, appellant clearly knew how to clean the machine and had done so on numerous occasions prior to being injured.
Based upon the evidence contained in the record and the standard set forth in Fyffe, we find a question of material fact exists as to whether Greensteel intentionally injured appellant.
Appellant's assignment of error is sustained.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for proceedings consistent with this opinion.
By: Wise, J., Gwin, P. J., and Reader, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.