DORIAN, APPELLEE, *v.*
EUCLID BOARD OF EDUCATION, APPELLANT.

[Cite as Dorian v. Bd. of Edn. (1980), 62 Ohio St. 2d 182.]

(No. 79-446—Decided May 14, 1980.)

*Green, Schiavoni, Murphy, Haines & Sgambati Co.,
L.P.A.,* and *Mr. John T. DeFazio,* for appellee.

*Mr. Patrick R. Rocco,* director of law, and *Mr. Henry B.
Fischer,* for appellant.

*Per Curiam.* R. C. 3319.16 states, in relevant part, that:
"The contract of a teacher may not be terminated except
for gross inefficiency or immorality; for willful and persistent
violations of reasonable regulations of the board of education;
or for other good and just cause. Before terminating any con-
tract, the employing board shall furnish the teacher a written
notice signed by its treasurer of its intention to consider the
termination of his contract with full specification of the
grounds for such consideration. The board shall not proceed
with formal action to terminate the contract until after the
tenth day after receipt of the notice by the teacher. Within ten
days after receipt of the notice from the treasurer of the
board, the teacher may file with the treasurer a written de-
mand for a hearing before the board or before a referee***."

These notice and hearing requirements were clearly not complied with in the case at bar.

R. C. 3319.17 states:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. In making such reduction, the board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools who shall, within each teaching field affected, give preference to teachers on continuing contracts and to teachers who have greater seniority. Teachers, whose continuing contracts are suspended, shall have the right to restoration to continuing service status in the order of seniority of service in the district if and when teaching positions become vacant or are created for which any of such teachers are or become qualified."

R. C. 3319.17 specifies three occasions when boards of education may decrease the number of teachers in their employ due to circumstances beyond the boards' and the teachers' control. In these instances the General Assembly recognized the need to give the boards flexibility, even in removing teachers under continuing contracts.

In order to give boards of education the necessary flexibility, the General Assembly enacted a section wholly distinct from R. C. 3319.16, the section normally used for the termination of continuing contracts. R. C. 3319.17 terms the removal a suspension and grants teachers the right of restoration to continuing service status when teaching positions become available in positions for which they are or become qualified. It balances the needs of the school system with the rights of the teacher who holds a continuing contract. No stigma is attached and a hearing is not necessary.

A board of education is not required to use the procedures enumerated in R. C. 3319.16 for terminating a teacher under a continuing contract if it follows the procedures for suspension of the contract under R. C. 3319.17, and if the suspension is due to one of the reasons enumerated therein.

In the case at bar, the board decided that it was necessary to reduce the number of teachers due to a decline in enrollment. Pursuant to the recommendation of the superintendent, the board transferred appellee to the position of French teacher.

By reducing the number of psychologists and notifying appellee that she could no longer be a school psychologist, the board, in effect, suspended her contract. The board then offered her a contract as a French teacher pursuant to R. C. 3319.17, which she refused to accept. Procedurally the suspension was valid.

The trial court found that enrollment had dropped 22 percent, from 11,363 students in 1965 (appellee's first year as school psychologist) to 8,850 in 1975-76, and that the acts of the Euclid Board of Education concerning appellee had been done in good faith. These findings showed that it was reasonable for the board to suspend appellee due to decreased enrollment, under R. C. 3319.17.

Appellee argues, however, that if the procedural safeguards in R. C. 3319.16 are not imposed on suspensions under R. C. 3319.17, such suspensions are unconstitutional. The basis of this claim is the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the similar protection of Sections 1, 16 and 19 of Article I of the Ohio Constitution.

A state employee is entitled to certain minimal procedural rights (normally notice and an opportunity to be heard) if a discharge constitutes a deprival of a property or liberty interest protected by the Due Process Clause. *Bd. of Regents* v. *Roth* (1972), 408 U. S. 564.

A protected property interest may be created by statute, such as a tenure statute, or by an implied contract which creates an expectancy of employment which is the equivalent of tenure. *Perry* v. *Sindermann* (1972), 408 U. S. 593. It is the expectation of the employee, as determined under state law, which creates the protected property interest. *Bishop* v. *Wood* (1976), 426 U. S. 341.

Ohio's teacher tenure law provides teachers under continuing contracts with the expectation of continued employment.

When that expectation is interfered with, minimal due process rights must be given. Ohio's statute, however, contains the narrow exceptions in R. C. 3319.17, exceptions which exist when teachers accept their first contracts with a board of education. If one of the three situations arises which are enumerated in R. C. 3319.17, the teacher's expectancy is that he or she may be suspended with a right of restoration. The cause of suspension is not within the teacher's control and is discernible by objective means. This suspension procedure does not deprive these teachers of a protected property interest.

A teacher who has been discharged from a position has been deprived of a protected liberty interest if some fundamental right such as free speech is involved, or if some stigma is attached to the discharge. *Roth, supra; Bishop, supra.* No stigma is involved in the case at bar. The suspension was due to a decline in enrollment and appellee was offered another teaching position in the school system. No claim is made that some other fundamental right is infringed upon. Clearly, there has been no interference with a liberty interest in the case at bar.

We hold that the suspension procedure under R. C. 3319.17 does not violate a teacher's right to due process of law.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.