**Robert LACY, et al., Plaintiffs,**

v.

**The DAYTON BOARD OF EDUCATION, et al., Defendants.**

No. C–3–82–360.

United States District Court,
S.D. Ohio, W.D.

Aug. 13, 1982.

David L. Hall, Dayton, Ohio, for plaintiffs.

John P. McHugh, Janet Cooper, Dayton, Ohio, for defendants.

DECISION AND ENTRY DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND SUSTAINING DEFENDANTS' MOTION TO DISMISS DUE TO THIS COURT'S LACK OF SUBJECT MATTER JURISDICTION; TERMINATION ENTRY

RICE, District Judge.

I. *Introduction*

On June 25, 1982, Plaintiffs Robert Lacy and Clint Bostick filed the within action

against the Dayton Board of Education (hereinafter Board), Dr. Bernard Hatch, the Superintendent of the Board, and various individual members of the Board, alleging that the Defendants had deprived them of federally protected property rights without due process of law by suspending their contracts without hearing, notice, or cause, and by assigning them to positions of lesser responsibility in violation of their contractual and statutory rights. Accordingly, Plaintiffs requested that the Court issue a preliminary and permanent injunction ordering the Board to assign them to principalships in accordance with their contractual and seniority rights. Also on June 25, 1982, Plaintiffs filed a motion for a temporary restraining order, which was denied by the Court on July 7, 1982.

On July 8, 1982, the Court conducted an oral hearing on Plaintiffs' request for a preliminary injunction, at which time the parties were afforded an opportunity to present testimony and exhibits pertinent to the issues under consideration herein. Plaintiffs contended, *inter alia,* at the oral hearing that they would have been retained as principals on the basis of their seniority were it not for the Superintendent's improper calculation of the seniority date of two persons who were retained as principals, *e.g.,* Webb, who ranked second on the list and was given seniority dating back to 1969 despite the fact that his assigned school was closed as a high school in 1975, and Williams, who ranked fifth on the list, but was given a year of principalship credit for a year spent as a principal at a middle school, *i.e.,* one which included grades six through eight. In addition, the Plaintiffs contested the retention of Booker, a female who ranked eleventh on the seniority list. At the close of Plaintiffs' case, the Defendants requested that the Court dismiss the within action, based on their assertion that the Plaintiffs did not possess a property interest in continued employment as high school principals, and that, consequently, there had been no violation of any constitutional right guaranteed to Plaintiffs. The Court took this motion under advisement, and requested that the parties submit post-

hearing memoranda directed to the issue of the property interest, if any, possessed by Plaintiffs, and to the question of whether Plaintiffs would be irreparably harmed if a preliminary injunction should not issue. The parties have submitted the appropriate memoranda, and after an analysis of the facts and legal authority pertinent to the matters under consideration, the Court has concluded that: (1) under the balancing test followed by the Sixth Circuit in *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979) (*Roth* ), the Plaintiffs have failed to demonstrate either a likelihood of success on the merits, or that they will suffer irreparable harm; and (2) Defendants' Motion to Dismiss should be granted, since the Court does not have jurisdiction over the subject matter involved in this action. Because Fed.R. Civ.P. 52(a) requires specific findings of fact and conclusions of law by the Court upon refusal of interlocutory injunctions, the Court will briefly set forth its determinations regarding the Plaintiffs' request for preliminary injunctive relief, and will then address those matters presented by the Defendants' motion to dismiss.

## II. *Preliminary Injunction*

### A. *Findings of Fact*

Based on the testimony adduced, and the exhibits admitted into evidence during the hearing on July 8, 1982, as well as the pleadings filed herein, the Court makes the following findings of fact:

1. Prior to May 20, 1982, Plaintiffs were employed by the Board as high school principals under "Administrator Limited Contracts."

2. The term of employment under said limited contracts was for a period of approximately two years, and was due to expire in August, 1983.

3. Based on the declining enrollment in the Dayton City Schools since 1965, it was determined by the Board that reductions in

staff would be required.[1] Accordingly, the Board on December 17, 1981, adopted a reduction in force policy with respect to administrative personnel, which provided that:

> The superintendent, in making recommendations to the Board on the assignment of personnel to positions in other job classifications and on staff reductions, must use his judgment in order to meet the special needs of the schools and school system. In general, reduction in staff will be made on the basis of seniority.

4. The guidelines established for the implementation of the reduction in force policy gave the superintendent the responsibility for determining the number of positions to be eliminated within several administrative classification categories, including, *inter alia,* that of high school principal, and in Section IX, stated that "[i]t is recognized that the special needs of the school system and of specific administrative/supervisory assignments will require judgment in reduction and reassignment which shall be the perogative of the superintendent."

5. The guidelines further listed the following service priorities:

a. Number of years in the system in the category where presently serving.

b. In the event of a tie in (a) above, the number of years in the system in the previous assignment.

c. In the event of a tie in (a) and (b) above, the total years in the system will be considered when administrative supervisory seniority is equal.

6. In order to determine which principalships should be eliminated, and to retain a comparable percentage of minority representation in the reduced force, the twelve high school principals were listed in order of seniority and by race and sex. The competency of individual principals was not a factor which was taken into consideration.

7. Plaintiffs Lacy and Bostick occupied positions seven and eight, respectively on the seniority list, due to their principal, assistant principal, and teacher seniority dates. The first five persons on the seniority list, *i.e.,* two black males and three white males, were retained as high school principals. In addition, the only female principal, who ranked eleventh in terms of seniority, but who had the longest teacher seniority and the second greatest assistant principal seniority, was retained as a principal. This latter decision was made because it was considered desirable to retain a female in order not to defeat the system's affirmative action program.

8. Williams, one of the principals retained, had the same principal seniority date as Plaintiff Lacy, *i.e.,* 1972, and was given credit for a year he had spent in 1972 as principal of McFarlane Intermediate School, which included grades six through eight. This experience was determined to be appropriately counted toward principalship seniority because Williams then had a high school principal's certificate and the school was considered to be the equivalent of, or could appropriately have been classified as a secondary school.

9. Webb, who ranked second on the seniority list, had a principal seniority date of 1969, and had been assigned to Roosevelt Center. Although Roosevelt was closed as a high school in 1975, Webb's contract classification remained that of a high school principal, and his assignment, *i.e.,* as a high school principal, was never altered. Based on these factors, as well as the Superintendent's feeling that he had no authority to treat Webb other than as a principal, Webb's principalship seniority was calculated from the year 1969.

10. Having determined to retain the first five principals on the seniority list, and the female, Booker, who was eleventh, Dr. Hatch recommended to the Board on May 20, 1982, that the contracts of the five low-

---

1. It should be noted that Plaintiffs have conceded that they are not disputing either the fact that declining enrollment necessitated a reorganization of the Dayton City Schools and a reduction in force, or the wisdom of the decision to reduce the staff of the school. Instead, Plaintiffs are contesting only the application of the reduction in force insofar as it impacted upon them.

est persons on the seniority list, including Lacy and Bostick, be suspended in accordance with the provisions of the Ohio Revised Code allowing reductions in force.[2] Hatch also recommended that the administrators who remained in an administrative/supervisory capacity receive at least the level of compensation to which they would have been entitled under the suspended contracts, and further urged the employment of Caldwell, Denny and Taylor as intermediate school principals, and Lacy and Bostick as assistant high school principals.

11. The Board approved the above recommendations on May 20, 1982, and on June 8, 1982, the Plaintiffs were advised in writing that their contracts had been suspended pursuant to Ohio Rev.Code Ann. §§ 3319.02 and 3319.17 (Page) and the Board's Reduction in Force Policy.

12. On or about June 1, 1982, Administrator Limited Contracts were issued to Plaintiffs, employing them at the same rate of compensation they would have received under their suspended contracts, and assigning them as assistant high school principals.

13. If a preliminary injunction does not issue, Plaintiffs will be unable to participate in the selection of some of the support personnel for their buildings, and will not be able to participate in preparing their schools for the opening day of the school year.

14. If a preliminary injunction should issue, it would affect the implementation of the reorganization plan in the Dayton City Schools, by displacing the principals currently assigned, and by creating a potential "ripple effect" on many other positions.

### B. *Conclusions of Law*

In *Roth, supra,* 583 F.2d 527 (6th Cir. 1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979), the Sixth Cir-

cuit indicated that the following approach should be utilized to determine whether injunctive relief should be granted:

> In addition to assessing the likelihood of success on the merits, the Court must consider the irreparability of any harm to the plaintiff, the balance of injury as between the parties, and the impact of the ruling on the public interest.

*Id.* at 537–538, quoting with approval from *Metropolitan Detroit Plumbing & Mechanical Contractors Ass'n v. H.E.W.,* 418 F.Supp. 585, 586 (E.D.Mich.1976) (*Detroit Plumbing*). While there has been an apparent conflict in the Sixth Circuit's interpretation of precisely what degree of likelihood of success is required, *compare, Ohio v. Callaway,* 497 F.2d 1235, 1240 (6th Cir.1974) (requiring possibility of success on the merits), with *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261, n.4 (6th Cir.1977) (requiring strong or substantial likelihood or probability of success on the merits), the Roth Court approved the following explanation, again quoting from *Detroit Plumbing,* 418 F.Supp. at 586:

> "This apparent disparity in the wording of the standard merely reflects the circumstance that no single factor is determinative as to the appropriateness of equitable relief .... In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction [*i.e.,* the greater the potential harm to the plaintiff absent an injunction, the less likelihood of success on the merits need be shown, and vice-versa].... It thus appears that the precise wording of the standard for the likelihood of success on the merits is not as important as a realistic appraisal of all the traditional factors weighed by a court of equity. A balancing is required, and not the mechanical application of a certain form of words."

*Roth, supra,* 583 F.2d at 537–538 (parenthetical material added).

---

**2.** Ironically, even if Webb had been eliminated entirely from the seniority list, if Williams had not been given credit for the middle school service, and if Booker had not been chosen, Plaintiff Bostick, based on the information provided to the Court, would still have ranked only seventh on the seniority list, and would not have been within the group of six persons eligible for retention as high school principals.

Balancing the above factors as required under *Roth,* the Court finds that injunctive relief is not appropriate under the circumstances of the present case. Initially, it should be noted that there is no likelihood that Plaintiffs will be able to prevail on the merits, in view of the fact that the Court does not appear to have jurisdiction over the subject matter of this action. Second, even if the Court possessed such jurisdiction, Plaintiffs have not demonstrated that they will sustain irreparable harm absent the issuance of an injunction. Should Plaintiffs bring an action for breach of contract in the proper forum, and prevail, they will be able to secure reinstatement to their rightful positions as well as back pay, and damages, if any, to which they may be entitled. It is pertinent to observe that the authorities cited by Plaintiffs to support their contentions of irreparable harm are either inapplicable, or indicate that the type of injury involved herein does not constitute irreparable harm. Specifically, in *Sebastian v. Texas Dept. of Corrections,* 541 F.Supp. 970, 29 Empl.Prac. Dec. (CCH) ¶ 32,716 (S.D.Texas 1982), although the Court indicated that irreparable injury would be presumed where a statutory violation had occurred, the Court was referring to a violation of Title VII. *See, id.* at 976. An examination of the cases cited in *Sebastian v. Texas Dept. of Corrections* indicates that in the area of Title VII actions, the Fifth Circuit, at least, has made an exception to the usual requirement that irreparable injury must be demonstrated prior to the issuance of injunctive relief. *See, United States v. Hayes Int'l Corp.,* 415 F.2d 1038, 1045 (5th Cir.1969) (holding in Title VII action that "where statutory rights of employees are involved and an injunction is authorized by statute and the statutory conditions are satisfied, ... the usual prerequisite of irreparable injury need not be established"). This authority is not applicable, however, to the present case, which is not a Title VII action, and which does not involve a statute authorizing injunctive relief. Even if such factors were present, it appears that the Sixth Circuit has refused to eliminate the requirement of showing irreparable harm in order to obtain injunctive relief in Title VII actions. *See, EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037, 1041–1043 (6th Cir.1981). In that decision, the Sixth Circuit specifically noted that there was some indication that the rule in *United States v. Hayes Int'l Corp.,* would not always be followed in the Fifth Circuit in view of the Supreme Court's subsequent decision in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (*Sampson* ). *See,* 666 F.2d at 1043.

The remaining case cited by Plaintiffs in support of their request for injunctive relief is *Sampson, supra,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Unfortunately, however, while Plaintiffs have quoted from the dissenting opinion of Justice Douglas, the pertinent ruling in *Sampson* is contained in the majority opinion, which reflects the view of six members of the Court, and which indicates that the Plaintiffs herein have not established the presence of irreparable harm. In *Sampson,* a probationary federal employee attempted to obtain injunctive relief while administrative proceedings were pending. *See, id.* at 63, 66, 94 S.Ct. at 940, 941. While the Court appeared to require a greater showing of irreparable harm in government personnel cases than that required for "more orthodox 'stays,'" *id.* at 84, 94 S.Ct. at 950, it nonetheless indicated that even under traditional standards for injunctive relief, "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Id.* at 90, 94 S.Ct. at 952–53. In the present case, in view of the fact that Plaintiffs have been offered employment at the same salary and for the same or approximately the same term as would have applied under their suspended contracts, Plaintiffs have not demonstrated that they will have lost income even temporarily. The only harm which appears to be present is the Plaintiffs' loss of the ability to select certain personnel for the operation of the school buildings to which they may, as principals, be assigned. This loss is not personal to Plaintiffs, and even if more than mere speculation, would appear to operate to the

disadvantage of the school system rather than Plaintiffs. Although Plaintiffs have alleged that they will lose reputation or standing in the community, there is no proof of such loss, since the transfers involved herein were not due to poor performance, but were based on a decline in enrollment. Even if such a factor had been present, the Supreme Court indicated in *Sampson* that it would not constitute irreparable harm. *See, id.* at 91 & 92, n. 68, 94 S.Ct. at 953, n. 68. Moreover, even if Plaintiffs had demonstrated an ability to succeed on the merits, the harm they have alleged would be outweighed by the disruption in Defendants' reorganization plan which would occur as a result of the issuance of preliminary injunctive relief. As a final matter, it should be noted that the public interest in the present action would appear to counsel against issuance of a preliminary injunction, since this matter involves internal, discretionary decisions of a school system which do not impinge upon any federally protected interest.

Based on the preceding analysis, the Court makes the following conclusions of law:

1. Plaintiffs have failed to establish any likelihood of success on the merits in the present action;

2. Plaintiffs have failed to demonstrate that they do not have an adequate remedy at law, or that they will suffer irreparable harm absent an injunction;

3. The balance of harm in the event of an injunction is in favor of the Board rather than the Plaintiffs;

4. Plaintiffs have not illustrated that the issuance of a preliminary injunction will not injure the public interest.

Therefore, Plaintiffs' request for a preliminary injunction is, in all respects, denied. Having disposed of those matters pertinent to the issuance of injunctive relief, the Court will next consider briefly the issues raised in the Defendants' motion to dismiss. It should be noted, however, that although Plaintiffs' lack of a protected property interest certainly influenced the Court's conclusion regarding potential success on the

merits, the denial of preliminary injunctive relief herein would have been appropriate anyway, based on Plaintiffs' failure to establish any harm which could be considered irreparable.

### III. *The Defendants' Motion to Dismiss*

■ As was previously noted, the Court took under advisement a motion to dismiss which was tendered by Defendants during the oral hearing held on July 8, 1982. Defendants' position during that hearing, and in subsequent memoranda, is that Plaintiffs did not have a property interest in continued employment as high school principals, either under Ohio law, or pursuant to the "Administrator Limited Contracts" under which they were employed. Plaintiffs have responded to these contentions by claiming that under *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (*Perry*), they possessed certain expectancies of employment and were thus entitled to due process protections before their contracts could be suspended.

The Supreme Court indicated in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* at 577, 92 S.Ct. at 2709. Subsequently, in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975), the Supreme Court indicated that while a property interest in continued employment could be created by "ordinance or by an implied contract . . . *the sufficiency of that claim of entitle-*

ment must be decided by reference to state law." *Id.* at 344, 96 S.Ct. at 2077 (emphasis added). *Accord, Ryan v. Aurora City Bd. of Educ.,* 540 F.2d 222, 227–228 (6th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (*Ryan*).

Plaintiffs have attempted to premise a property interest upon the fact that Ohio Rev.Code Ann. § 3319.02 (Page Supp.1981) provides with respect to contracts such as those involved herein, that:

> The term of such contract shall not exceed three years except that when an assistant superintendent, principal, ... or other administrator has been employed by the school district for three years or more, the term of his contract shall not be for less than two nor more than five years....

> Except by mutual agreement of the parties hereto, no assistant superintendent, principal, ... or other administrator shall be transferred during the life of his contract to a position of lesser responsibility.

Based on this statute and the authority of *Soni v. Bd. of Trustees of Univ. of Tenn.,* 513 F.2d 347 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), Plaintiffs appear to be contending that despite the presence of the Ohio reduction in force statute, they have been provided with some type of expectancy of continued employment. Unfortunately, to accept this argument would require the Court to disregard the plain meaning of the statutes involved, an "authoritative interpretation," *Bishop v. Wood,* 426 U.S. 341, 345, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1975) of Ohio Rev.Code Ann. § 3319.17 (Page 1972) by Ohio's highest court, and pertinent Sixth Circuit authority which indicates that this Court has no ability to intervene in situations such as the present.

§ 3319.02, cited by Plaintiffs in support of their asserted property interest, provides, immediately following the above-quoted portion, that "[n]o contract may be terminated or suspended *except* pursuant to section 3319.16 or 3319.17 of the Revised Code." (emphasis added). Ohio Rev.Code Ann. § 3319.16 (Page 1972) provides for the termination of contracts for cause, and mandates certain procedures such as notice and an opportunity for a hearing on the proposed action. However, Ohio Rev.Code Ann. § 3319.17 (Page 1972), the reduction-in-force statute, provides no due process protections, and indicates that:

> When by reason of decreased enrollment, ... a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. In making such reductions, the board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools, who shall, within each teaching field affected, give preference to teachers on continuing contracts and to teachers who have greater seniority.

Because principals are classified as teachers for the purposes of this section of the Ohio Revised Code, *see,* Ohio Rev.Code Ann. § 3319.09(A) (Page 1972), it is obvious that the reduction in force statute applies to principals as well as to teachers.

In *Dorian v. Euclid Bd. of Educ.,* 62 Ohio St.2d 182, 404 N.E.2d 155 (1980) (*Dorian*), the Ohio Supreme Court considered the application of § 3319.17 to a case involving a school psychologist. In *Dorian,* the plaintiff was employed under a continuing contract as a school psychologist, but was notified that she would be transferred to a position as a French teacher. *Id.* at 182, 404 N.E.2d 156–157. A decline in enrollment required a reduction in the number of school psychologists, and plaintiff, as the psychologist with least seniority, was selected for transfer. *Id.* The trial court concluded that the board had breached its contract with the plaintiff by not following the due process procedures mandated by § 3319.16, and the Court of Appeals affirmed. *Id.* at 183, 404 N.E.2d 157. The Ohio Supreme Court reversed, finding that:

> A board of education is not required to use the procedures enumerated in R.C. 3319.16 for terminating a teacher under a continuing contract if it follows the procedures for suspension of the contract under R.C. 3319.17, and if the suspension

is due to one of the reasons enumerated therein.

*Id.* at 184, 404 N.E.2d 158.

Significantly, for purposes herein, the Court rejected the plaintiff's claim that § 3319.17 suspensions would be unconstitutional, *i.e.,* violative of due process, if the procedural safeguards of 3319.16 were not followed. *Id.* at 185, 404 N.E.2d 158. The Court reasoned that while the plaintiff had an expectation of continued employment under her continuing contract, such an expectation, or protected property interest, was negated by the operation of § 3319.17. Specifically, the Court stated:

Ohio's teacher tenure law provides teachers under continuing contracts with the expectation of continued employment. When that expectation is interfered with, minimal due process rights must be given. *Ohio's statute, however, contains the narrow exceptions in R.C. 3319.17, exceptions which exist when teachers accept their first contracts with a board of education. If one of the three situations arises which are enumerated in R.C. 3319.17* [such as a decline in enrollment], *the teacher's expectancy is that he or she may be suspended with a right of restoration. The cause of suspension is not within the teacher's control and is discernible by objective means. The suspension procedure does not deprive these teachers of a protected property interest.*

*Id.* at 185–186, 404 N.E.2d 158–59 (parenthetical material added).

The clear implication of the above language is that in those circumstances outlined in § 3319.17, there is no property interested in continued employment because the statute itself removes any legitimate claim of entitlement, or expectancy that employment will continue. In the present case, Plaintiffs are not even being deprived of a continuing contract, like the plaintiff in *Dorian,* but were employed under limited administrator contracts, which under Ohio law, as well as under the plain language of the contracts themselves, do not confer any entitlement to continued employment. *See, Ross v. Bd. of Educ.,* 52 Ohio App.2d 28,

30–32, 367 N.E.2d 1209, 1211–1213 (Ct.App. 1977) and *Depas v. Highland Local School Dist.,* 52 Ohio St.2d 193, 197, 370 N.E.2d 744, 746 (1977) (holding that Ohio law does not extend statutory tenure to principals). Even if Plaintiffs could claim to have possessed an expectancy of continued employment as principals, § 3319.17 would operate, as noted in *Dorian,* to negate any such expectation where, as herein, a reduction in staff has been necessitated by a decline in enrollment.

Based on *Soni, supra,* 513 F.2d 347 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), Plaintiffs appear to be contending that they have been granted some form of implied tenure even though the law of the State of Ohio provides otherwise. *See,* Doc. # 13, p. 2. The Sixth Circuit clearly rejected this type of claim in *Ryan, supra,* 540 F.2d 222 (6th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977), a decision rendered subsequent to *Soni.* In *Ryan,* the Sixth Circuit recognized the concept of implied tenure, but stated:

We hold, however, that a non-tenured teacher has no "expectancy" of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system..... Since property interests are guaranteed by state law and not the Constitution, ... the fact that the State limits the guarantee to only tenured teachers necessarily negatives any property interest.

*Id.* at 227. The Court further stated "[t]he fact that Ohio already has an explicit tenure policy obviates the need, which existed in *Sinderman,* to supply one by implication." *Id.* at 228. In the present case, while Plaintiffs have tenured status as teachers under continuing contracts, they are in the position of the non-tenured teachers in *Ryan,* insofar as their limited administrative contracts are concerned, since as was previously noted, neither the Ohio tenure law nor the contracts themselves grant tenure to persons employed as principals. Thus, as in *Ryan,* the existence of the explicit state tenure system herein removes

the necessity for providing tenure by implication. Moreover, *Soni* is further deemed to be inapplicable herein because that case involved a university's own tenure system, the operation of which appeared to have been waived by the university. *Soni, supra,* 513 F.2d at 350. That situation is dissimilar to the present, as well as to *Ryan,* wherein the Court stated that the board of education did not have " 'the authority or power to enlarge the limits of teacher tenure beyond ... [the statutory] limits.' " *Ryan, supra,* 540 F.2d at 229, quoting from and adopting the opinion of the district court (parenthetical material added). Thus, unlike the University in *Soni,* the board herein would have had no ability to waive tenure requirements and to establish tenure by implication.

The preceding analysis has indicated that Plaintiffs Lacy and Bostick had no property interest in continued employment as high school principals. Consequently, since Plaintiffs have not been deprived of any right secured by the Constitution or laws of the United States, this Court does not have subject matter jurisdiction over the present action, and is required under *Ryan,* as well as prior Sixth Circuit authority, to dismiss the present action. Specifically, the Sixth Circuit in *Ryan* indicated that:

> It is the rule of this Circuit that judicial review in actions of school authorities involving the administration of State Teacher Tenure Laws is in the State courts, not the federal courts, with the exception of cases involving deprivation of rights delineated by this court in *Orr* [*i.e.,* deprivation of freedom of speech, right against self-incrimination, and rights guaranteed by the due process clause, or under the equal protection clause].

*Id.* at 225, following *Orr v. Trinter,* 444 F.2d 128 (6th Cir.1971), *cert. denied,* 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972) (parenthetical material added). As a final matter, the Court notes that any substantive due process claim, which does not appear to have been raised specifically by anyone but the Defendants, is foreclosed by the fact that "the absence of any claim ... that an interest in liberty or property has been impaired is a fatal defect in ... [a] substantive due process argument." *Jeffries v. Turkey Run Consol. School Dist.,* 492 F.2d 1, 4 (7th Cir.1974). *Accord, Ryan, supra,* 540 F.2d 222, 228–229 (6th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

## IV. *Conclusion*

Based on the foregoing discussion, the Court finds that:

1. Plaintiffs' request for a preliminary injunction is denied, due to the fact that Plaintiffs have failed to demonstrate either a likelihood of success on the merits or the existence of irreparable harm;

2. Defendants' Motion to Dismiss, taken under advisement at the oral hearing, is granted, based on the fact that the Court does not have jurisdiction over the subject matter of the present action. Although this matter was raised orally by Defendants rather than by a written motion to dismiss, this fact is not relevant, since lack of subject matter may be raised at any time, either on the Court's own motion, or by the suggestion of the parties. *See,* Fed.R.Civ.P. 12(h)(3); *Morrison v. Morrison,* 408 F.Supp. 315, 316 (N.D.Tex.1976).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.