BOHMANN, APPELLEE, *v.* BOARD OF EDUCATION OF THE WEST CLERMONT LOCAL SCHOOL DISTRICT, APPELLANT.

[Cite as Bohmann *v.* Bd. of Edn. (1983), 2 Ohio St. 3d 136.]

(No. 82-134—Decided January 5, 1983.)

[1] It is undisputed that the non-renewal of Wiesenhahn's contract prior to April 30, 1977, was in accordance with R.C. 3319.11.

[2] Appellee also alleged that the transfer violated the collective bargaining agreement, board policy, and R.C. 3319.08, 3319.12 and 3319.17.

*Biegel, Kirkland & Berger Co., L.P.A., Ms. Elaine M. Stoermer* and *Mr. James R. Kirkland,* for appellee.

*Ennis & Roberts Co., L.P.A., Mr. George E. Roberts, III,* and *Mr. J. Michael Fischer,* for appellant.

*Per Curiam.* The sole issue presented in this case is whether the seniority provisions of R.C. 3319.17 apply to the transfer or reassignment of a teacher from one teaching area to another in order to reduce the number of teachers assigned to a particular teaching field due to decreased student enrollment in that area. For the reasons that follow, this court holds that the seniority provisions of R.C. 3319.17 need not be followed under these circumstances.

The resolution of the dispute herein necessitates construction of R.C. 3319.17, which provides, in its entirety, that:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. In making such reduction, the board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools who shall, within each teaching field affected, give preference to teachers on continuing contracts and to teachers who have greater seniority. Teachers, whose continuing contracts are suspended, shall have the right of restoration to continuing service status in the order of seniority of service in the district if and when teaching positions become vacant or are created for which any of such teachers are or become qualified."

R.C. 3319.17 applies to those situations where there is a reduction in the number of teachers employed. Thus, as a threshold consideration, this court must determine whether, under the facts of this case, there was a reduction in the number of teachers as contemplated by R.C. 3319.17.

Appellee argues that there was a "reduction" in staff as contemplated by R.C. 3319.17 since the number of teachers in the O.W.E. program was reduced from three to two at Glen Este High School due to decreased student enrollment in the O.W.E. program.

Being mindful of the well-established principle that "it is the duty of this court to give effect to the words used [in a statute and] not to delete words *or to insert words,*"[3] this court is not persuaded by appellee's statutory con-

---

[3] *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127 [49 O.O.2d 445]. (Emphasis added.)

struction. R.C. 3319.17 clearly provides that certain procedures must be followed when there is a reduction in the number of teachers due to decreased enrollment of pupils. Contrary to the construction urged by appellee, however, this section does not read "when by reason of decreased enrollment of pupils *in a particular course of study,* * * * a board of education decides that it will be necessary to reduce the number of teachers *in a particular teaching field,* the board may make reasonable reductions."

Nowhere in the relevant statutory language did the General Assembly broaden the scope of the term "reduction" as appellee so argues. If the General Assembly had intended R.C. 3319.17 to apply where there is a reduction of the number of teachers *in a particular teaching field* due to decreased student enrollment in that particular area, it could have easily so provided. But the General Assembly did not choose to expressly confer such seniority rights upon teachers under such circumstances, and this court will not, nor cannot, do so now under the guise of statutory construction. For, it is well-established that this court is limited in its analysis to construction and interpretation of statutes as written. See *First National Bank of Wilmington* v. *Kosydar* (1976), 45 Ohio St. 2d 101, 106 [74 O.O.2d 206], and cases cited therein. Indeed, it is well-settled that this court may not legislate to add a requirement to a statute enacted by the General Assembly. *Wheeling Steel Corp.* v. *Porterfield* (1970), 24 Ohio St. 2d 24, 27-28 [53 O.O.2d 13].

Moreover, a more faithful interpretation of R.C. 3319.17, and one which gives effect to its clear and unambiguous terms, is that R.C. 3319.17 applies to those situations where there is a reduction in the *actual* number of teachers in the board's employ at a particular time. In cases of teacher reassignment, the teaching complement remains the same. Thus, while teacher reassignment or transfer results in a shift in the number of teachers in a certain field of study, it does not result in a diminution of the actual number of teachers employed. Hence, the provisions of R.C. 3319.17 are not applicable to the transfer or reassignment of a teacher.

This court recently noted in *Dorian* v. *Bd. of Edn.* (1980), 62 Ohio St. 2d 182, 184 [16 O.O.3d 208], that the General Assembly, in enacting R.C. 3319.17 recognized the need to give a board of education flexibility in decreasing the number of teachers in its employ due to circumstances beyond the board's and teachers' control. The decision of this court today reflects this spirit, for it properly preserves the flexibility a board of education needs in dealing with changing staffing requirements.

Furthermore, this construction is buttressed by and is in accordance with corresponding statutory provisions. Most notably, R.C. 3319.01 expressly affords the superintendent the power to "* * * direct and assign teachers and other employees of the schools under his supervision * * *." The decision herein acknowledges this legislative grant and properly preserves the right afforded superintendents to make staff assignments as they deem fit.

In the instant case, the superintendent, in reassigning appellee from his position as an O.W.E. instructor to that of a study hall teacher, was simply

exercising his prerogative under R.C. 3319.01 to assign teachers to their teaching responsibilities. There was, as a result of this reassignment, a change in the number of teachers assigned to the O.W.E. program. There was not, however, a diminution in the actual number of teachers employed by the board. Accordingly, there was no reduction in staff as contemplated by R.C. 3319.17 and hence the section and its seniority provisions are not applicable.[4]

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, PARRINO and HOLMES, JJ., concur.

LOCHER, C. BROWN and KRUPANSKY, JJ., dissent.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.

CELEBREZZE, C.J., concurring. I concur in the majority's conclusion that R.C. 3319.17 does not apply to this fact situation. However, I write separately to set forth some practical implications which could result from a contrary holding as urged by appellee.

The majority's construction of R.C. 3319.17 is in the best interest of teachers.[5] Construing it to apply to reductions in the actual number of teachers employed in the overall school system at a particular time provides a broader base for staffing decisions by school boards. For example, if a board decides that a particular program should be eliminated or reduced in size due to a decreased student enrollment, a teacher whose position is eliminated could be considered for transfer to another department.

Conversely, if the seniority provisions of R.C. 3319.17 are applied when the number of teachers in a particular program is decreased, the board may be forced to suspend a teacher losing a position because it could not consider staffing for the system as a whole. This could result in a teacher, with less seniority in the program which is reduced or eliminated, being suspended even though he has considerably more seniority than teachers in other departments in which he is also qualified to teach. Thus, applying R.C. 3319.17 to reductions in a department or particular program might ultimately prove an injustice to teachers.

---

[4] The court of appeals based its decision on what it considered to be the peculiar facts of this case. While this court is cognizant that the facts of this case are peculiar, the focus of our inquiry must instead be on the duties imposed by and rights granted under R.C. 3319.17.

[5] While appellee's situation may be a matter of concern, it should be noted that he had the option of requesting a review of the transfer pursuant to the master contract and that he did not appeal on that issue.

Accordingly, I agree that the seniority provisions of R.C. 3319.17 only apply when there is a reduction in the overall number of teachers in the school system and that the judgment of the court of appeals be reversed.

KRUPANSKY, J., dissenting. The majority's holding unduly restricts the impact of R.C. 3319.17 in situations such as found in the case *sub judice* and, in so doing, validates practices which this section was intended to thwart. Therefore, I must respectfully dissent.

The majority concludes appellant's conduct was not covered by the provisions of R.C. 3319.17. This finding appears to be based on the fact that all the teachers employed by appellant in the O.W.E program for the 1976-77 school year were employed by appellant for the 1977-78 school year. For several reasons, I disagree with the majority's conclusion that R.C. 3319.17 is inapplicable to the situation presented herein.

Analyzing R.C. 3319.17 and applying it to the relevant facts of this case reveals: (1) there was a decrease in the enrollment of pupils in the O.W.E. program at Glen Este High School during the 1976-77 school year; (2) due to this decrease in enrollment, the Board of Education of the West Clermont Local School District decided to reduce the number of teachers in the O.W.E. program at the Glen Este High School for the 1977-78 school year from three to two; (3) in making reductions in the number of teachers, R.C. 3319.17 mandates that *"within each teaching field affected"* (here the O.W.E. program) preference must be given to "teachers who have greater seniority"; and (4) despite the requirements of R.C. 3319.17, appellant employed Wiesenhahn as a teacher in the O.W.E. program instead of appellee who had greater seniority.

Notwithstanding the seemingly clear dictates of R.C. 3319.17, the majority determines the instant situation is not encompassed by this section since the overall number of teachers employed by appellant remained constant. The majority also states:

"Contrary to the construction urged by appellee, however, this section does not read 'when by reason of decreased enrollment of pupils in a *particular course of study,* * * * a board of education decides that it will be necessary to reduce the number of teachers *in a particular teaching field,* the board may make reasonable reductions.' " (Emphasis *sic*.)

I differ with the majority's implication that it is necessary to add words and phrases to R.C. 3319.17 in order to adopt appellee's position. Rather, I feel one need only interpret the words of R.C. 3319.17 in a reasonable, logical manner to conclude this section applies in a situation where the number of teachers in a given field is reduced due to a decrease in student enrollment.

Even if one rejects the contention that R.C. 3319.17 applies to reductions in a particular teaching field, still the entire transaction herein, *i.e.,* the non-renewal of Wiesenhahn's contract, the subsequent rehiring of Wiesenhahn and the reassignment of appellee, should be held answerable to the dictates of R.C. 3319.17. Plainly, appellant would have been in violation of R.C.

3319.17 had it failed to renew appellee's contract instead of Wiesenhahn's contract. Just as plainly, there would have been a reduction in the number of teachers employed by appellant had Wiesenhahn not been rehired and had an apparently unneeded and undesirable position not been created for appellee. In effect, therefore, appellant, through its calculated firings, rehirings and reassignments, was able to achieve an end clearly prohibited by R.C. 3319.17. Stated another way, appellant's maneuverings do not mask the true import of its actions and, accordingly, I feel its conduct should be constrained by the mandates of R.C. 3319.17.

Finally, I, like the majority, agree with the principles recognized by this court in *Dorian* v. *Bd. of Edn.* (1980), 62 Ohio St. 2d 182 [16 O.O.3d 208], relating to the need of granting boards of education flexibility in managing their staff. In *Dorian* the trial court found the Euclid Board of Education acted in good faith in suspending the teacher therein. However, in the case *sub judice* the trial court found against the Board of Education of the West Clermont Local School District and in favor of the teacher. The flexibility approved in *Dorian* is not co-extensive with permitting the school boards of this state to conduct staff business totally unfettered. I believe R.C. 3319.17 provides such a restraint and should be applied.

In sum, I feel R.C. 3319.17 should be interpreted to encompass a situation where a teacher, after twenty-three years of employment, is relegated to a newly created and seemingly unneeded position as a study hall teacher while an individual with less seniority retains a position in appellee's former area. Any other construction of this section encourages the school boards of this state to conduct the reassignment of teachers in an arbitrary and inequitable manner.

LOCHER and C. BROWN, JJ., concur in the foregoing dissenting opinion.