PHILLIPS, APPELLANT, *v.* SOUTH RANGE LOCAL SCHOOL DISTRICT
BOARD OF EDUCATION, APPELLEE.

[Cite as Phillips *v.* South Range Local School Dist. Bd. of Edn. (1989),
45 Ohio St. 3d 66.]

(No. 88-899—Submitted April 26, 1989—Decided August 23, 1989.)

(H.B. No. 121, 119 Ohio Laws 121) was enacted to provide teachers with employment stability. " 'The very laudable purpose of this act was to insure to the teachers some measure of security in their important work and to free them, at least to a measurable extent from the "vicissitudes of politics" or the likes or dislikes of those charged with the administration of school affairs.' " *State, ex rel. Bishop,* v. *Bd. of Edn.* (1942), 139 Ohio St. 427, 439, 22 O.O. 494, 499, 40 N.E. 2d 913, 919, quoting *Bd. of Edn. of Marshall County* v. *Baugh* (1941), 240 Ala. 391, 395, 199 So. 822, 825. The Act, now codified at R.C. 3319.08 through 3319.18, is to be construed in favor of teachers. *State, ex rel. Rodgers,* v. *Hubbard Local School Dist. Bd. of Edn.* (1984), 10 Ohio St. 3d 136, 138, 10 OBR 458, 459, 461 N.E. 2d 1308, 1310.

Where a board of education decides to terminate the continuing contract of a teacher, it must follow R.C. 3319.16, which provides that a contract may be terminated only "* * * for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. * * *" If a teacher's contract is terminated under the provisions of R.C. 3319.16, then due-process protection, such as notice and opportunity for a hearing, is required.

R.C. 3319.17 is a special statute which enables a board of education to suspend teachers' contracts for a decline in enrollment, which is totally unrelated to the teachers' performance. R.C. 3319.17 provides in part:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines* and *Barry Laine,* for appellant.

*Henderson, Covington, Stein, Donchess & Messenger* and *James L. Messenger,* for appellee.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert T. Baker* and *Kimball H. Carey,* urging affirmance for *amicus curiae* Ohio School Boards Association.

ALICE ROBIE RESNICK, J. The Ohio Teachers' Tenure Act of 1941

reduce the number of teachers, it may make a reasonable reduction. * * *"

In *Dorian* v. *Euclid Bd. of Edn.* (1980), 62 Ohio St. 2d 182, 184, 16 O.O. 3d 208, 210, 404 N.E. 2d 155, 158, we held that "[a] board of education is not required to use the procedures enumerated in R.C. 3319.16 for terminating a teacher under a continuing contract if it follows-the procedures for suspension of the contract under R.C. 3319.17, and if the suspension is due to one of the reasons enumerated therein." The General Assembly enacted R.C. 3319.17 in order to give boards of education flexibility by balancing "* * * the needs of a school system with the rights of the teacher who holds a continuing contract." *Id.*

Because the purpose of the Teachers' Tenure Act is to provide teachers with some degree of job security, R.C. 3319.17 is construed narrowly against boards of education. See *State, ex rel. Kohr,* v. *Hooker* (1958), 106 Ohio App. 1, 4, 6 O.O. 2d 269, 270, 152 N.E. 2d 788, 791. R.C. 3319.17 dispenses with the due-process requirements of R.C. 3319.16, and will apply only if one of the conditions therein is shown to exist. It is an emergency measure. A board of education may suspend a teacher's continuing contract pursuant to R.C. 3319.17 only if three requirements are met: first, the existence of one of the reasons enumerated in R.C. 3319.17; second, the reduction must be made "by reason of" one of those enumerated reasons; and third, the reduction must be reasonable.

Appellant asserts that the board did not suspend her contract because of a decline in enrollment. Instead she contends that the suspension was due to changes in the Business Education Department. Appellee, on the other hand, states that it suspended her contract as a result of a decline in enrollment. We must therefore look at appellant's contract suspension in light of R.C. 3319.17 and determine whether the trial court properly sustained appellee's motion.

At the evidentiary hearing held on September 12, 1985, both parties presented evidence regarding enrollment at the district and high school levels, including the Business Education Department. Although the record discloses some discrepancies in these figures, the trial court in its decision on the cross-motions for summary judgment determined that the facts were "substantially undisputed." The court found that although there was no short-term decline in enrollment, there had been a decline in enrollment in the school district during the ten-year period beginning in 1976.

The court determined that average daily membership ("ADM") in the district in both 1984-1985 and 1985-1986 was 1,239.[2] During the prior ten years, however, it found that there had been a decrease in the school district of three hundred fifty-seven students. The court also stated that, with the consolidation of the office courses and the elimination of shorthand in the Business Education Department, a further decrease in enrollment was demonstrated in that particular department.

Appellant argued that because there was no district or high school enrollment decline during the year of

---

[2] ADM is "based on membership in regular day classes during the first full school week in October." Baker & Carey, 1988-89 Handbook of Ohio School Law (1988) 164, Section 5.44. See, also, R.C. 3317.02(A). It is used for determining funding for school districts.

the suspension of her contract, the board acted improperly and in violation of R.C. 3319.17. Appellee countered that in *Dorian, supra,* we found that a nine-year overall decline in enrollment immediately preceding a suspension could be the basis of a reduction in force pursuant to R.C. 3319.17.

The trial court, relying on *Dorian, supra,* held that a long-term decline could be used for determining whether there had been a decline in enrollment pursuant to R.C. 3319.17. It found that R.C. 3319.17 set forth no time frame during which a decline must occur and that appellee could use the overall ten-year decline in enrollment as a basis for suspension of appellant's continuing teaching contract.

We agree that a decline in pupil enrollment does not necessarily occur in a short period of time. It may occur gradually. However, in the case before us, the record shows that there was no decline in high school enrollment in the year of the suspension of appellant's contract. High school enrollment had been increasing each year since 1983, and district-wide enrollment was approximately the same in the 1984-1985 school year as in the 1985-1986 school year.

The lower court's reliance on *Dorian, supra,* was misplaced in that it is factually distinguishable from the instant case. In *Dorian,* the record shows that an eleven-year decline in enrollment continued during and beyond the year of the suspension. Here, the record shows that the decline had stopped prior to the suspension. There is a difference between suspending a teacher's contract in the midst of declining enrollment and suspending a teacher's contract as done here, after the district-wide decline had ceased and where there was evidence that, at least at the high school level, enrollment was increasing.

A board of education cannot base its reduction in the number of teachers on R.C. 3319.17 unless it can show that its action was "by reason of" one of the statutory exceptions contained therein. In the case before us one of the enumerated reasons for invoking R.C. 3319.17, declining enrollment, had ceased to exist at the time of the suspension of appellant's contract. To allow a board of education to loosely use "declining enrollment" as a reason for suspension, when, as here, enrollment no longer was declining, would be to emasculate the teacher tenure law. R.C. 3319.17 should be used only where an actual and current decline in enrollment is shown to exist at the time of a reduction in the number of teachers.

In *Hixson* v. *Greater Latrobe School Dist.* (1980), 52 Pa. Commw. 92, 421 A. 2d 474, the court construed a statute which, like R.C. 3319.17, allowed a school board to suspend a teacher's contract because of substantial decline in pupil enrollment.[3] There, the board of education tried to use a prior year's enrollment decline as the basis for suspension in the following year. The court held that a school board could not suspend a teacher's contract because of declining enrollment when all suspensions based on such decline were completed in the previous year. The court ruled that "[t]he enumerated reasons are the ex-

---

[3] The Ohio Teachers' Tenure Act was modeled after similar laws of other states, in particular those of Indiana and Pennsylvania. *State, ex rel. Kohr,* v. *Hooker* (1958), 106 Ohio App. 1, 3, 6 O.O. 2d 269, 270, 152 N.E. 2d 788, 790. See, also, 82 Ohio Jurisprudence 3d (1988) 476, Schools, Universities and Colleges, Section 247.

clusive basis on which a suspension of a professional employee may be made. *Sporie* v. *Eastern Westmoreland Area Vocational Technical School,* 47 Pa. Cmwlth. 390, 408 A. 2d 888 (1979). A suspension on any other basis is invalid." *Hixson, supra,* at ___, 421 A. 2d at 476.

We further note that here the trial court stated in its judgment entry on the preliminary injunction on December 17, 1985 that the Business Education Department enrollment "over the past year or so * * * was cut, probably by the consolidation of the Office courses and the elimination of Shorthand." In its June 22, 1987 judgment entry on the parties' motions for summary judgment, the court again stated that the "office courses were consolidated and the Shorthand course was eliminated which resulted in fewer students in the Business Education Department * * *." Sandra Mink, appellant's colleague in the Business Education Department, and Ralph Robinette, Superintendent of South Range Local School District, both testified that consolidation of courses and elimination of one teacher in the Business Education Department would result in a declining enrollment in that department.

If a board of education reorganizes a department, with the result being a decreased student enrollment, it cannot use such decreased enrollment to support a suspension pursuant to R.C. 3319.17. The statute does not apply to the situation where the board's own action results in a declining enrollment. Nor does it apply when a board of education eliminates a subject which a teacher is certified to teach. See *State, ex rel. Cutler,* v. *Pike Cty. Joint Area Vocational School Dist.* (1983), 6 Ohio St. 3d 138, 6 OBR 195, 451 N.E. 2d 800. Rather, R.C. 3319.17 was enacted to allow boards of education, in emergency situations such as a current decline in enrollment, to reduce the number of teachers "due to circumstances *beyond the boards'* and the teachers' control." (Emphasis added.) *Dorian, supra,* at 184, 16 O.O. 3d at 210, 404 N.E. 2d at 158. It cannot operate where the board's own manipulations, no matter how benign, form the basis of suspension of a tenured teacher's contract. To rule otherwise would allow a board of education to circumvent the teacher tenure law. Cf. *Frieberg* v. *Bd. of Edn. of Big Bay de Noc School Dist.* (1979), 91 Mich. App. 462, 283 N.W. 2d 775. Appellee correctly states that its decision to suspend appellant's contract occurred prior to any decrease in enrollment allegedly caused by consolidation and elimination of certain Business Education Department courses. However, both lower courts considered enrollment figures and ADM before and after the suspension in order to determine whether there had been long-term or short-term declines in enrollment. We find that if a board of education decides to suspend a teacher's contract only a few weeks before the start of a new school year, purportedly because of a decline in enrollment, a court properly can look at enrollment before and after such suspension in order to determine whether a decline in enrollment indeed existed during and immediately following the year of suspension.

We acknowledge that a board of education has a particular expertise in making decisions regarding course offerings. It must have flexibility to meet current educational needs. The board of education, however, does not have unbridled discretion in designing the makeup of the curriculum and professional staff. "* * *A professional employee may not be suspended upon a mere finding that he is unnecessary, or

else the tenure provisions of the Code would be meaningless. See *Langan* v. *Pittston School District,* 335 Pa. 395, 6 A. 2d 772, (1939). * * *As stated in *Ehret* [v. *Kulpmont Borough School District* (1939), 333 Pa. 518, 5 A. 2d 188], 'a department may not be abolished merely to circumvent the [tenure provisions] and to accomplish the dismissal of a teacher for political or arbitrary reasons by unlawful subterfuge.' 333 Pa. at 528, 5 A. 2d at 193." *Sporie* v. *Eastern Westmoreland Area Vocational-Technical School* (1979), 47 Pa. Commw. 390, ___, 408 A. 2d 888, 892.

A suspension of a teacher's continuing contract must be based squarely on one of the enumerated reasons in R.C. 3319.17. A suspension because of restructuring of a department or economy measures, therefore, would not be proper under R.C. 3319.17. See *Alberts* v. *Garofalo* (1958), 393 Pa. 212, 142 A. 2d 280. Likewise, if a board of education, in an effort to reduce a projected budget deficit, abolished certain teaching positions, thereby resulting in one excess teacher in the Business Education Department, suspension of that teacher's contract would not be proper. See *Theros* v. *Warwick Bd. of School Directors* (1979), 42 Pa. Commw. 296, 401 A. 2d 575.

Upon review of the record, we find that appellant's suspension was not based on the reasons provided in R.C. 3319.17. District-wide and high school enrollment had ceased to decline in the year of suspension and therefore could not properly form the basis for her suspension. "It is clear, of course, that a school board has the right to abolish a position when, in the discretion of the board, that position is no longer necessary. * * * It is also clear that a tenured professional employee whose position has been abolished is protected by the tenure provisions of the

Code and therefore cannot be suspended except for one of the reasons enumerated therein. * * *" *Brinser* v. *Cumberland-Perry Area Vocational-Technical School Joint-Operating Committee* (1979), 44 Pa. Commw. 554, ___, 405 A. 2d 964, 967. If we were to allow a suspension pursuant to R.C. 3319.17 when there was no decline in enrollment during the year of suspension, we would be permitting a board of education to suspend a contract without the protection afforded by the Teachers' Tenure Act, including the due-process provisions set forth in R.C. 3319.16. R.C. 3319.17 is a special statute which can be invoked on the basis of declining enrollment only when there is an actual continuing decline in enrollment. It applies in those situations where a decline in enrollment exists and will likely continue in the near future.

We reiterate that R.C. 3319.16 is the appropriate statute to use when terminating a teacher's contract. A "suspension" of a contract can be used only when one of the limited number of conditions provided for in R.C. 3319.17 is found to exist. A board of education cannot invoke R.C. 3319.17 when it decides to restructure a department and reduces the number of teachers pursuant to the reorganization.

Summary judgment is appropriate where no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come only to one conclusion, that being a conclusion adverse to the party against whom the motion for summary judgment is made. Furthermore, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47.

There is little dispute that the decline in district-wide enrollment had ceased during the year of appellant's suspension. Accordingly, we hold that summary judgment was improperly granted to appellee. A long-term decrease in enrollment cannot be the basis for a reduction in the number of teachers where the record shows that in the year of a teacher's suspension there was no decline in enrollment. Summary judgment is hereby entered for appellant and the judgment of the court of appeals is reversed.

*Judgment reversed.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I am fully in accord with the commentary of Justice Wright in his dissent herein and join such dissent, but wish to make additional points which I believe will show the inaccuracies of the majority opinion. School board members who have attained their positions with the thought that they would be able to maintain a reasonable degree of local control of the management of school affairs in their district have been dealt yet another blow by this court in denial of such control over their school systems.

The majority arrives at its conclusion here by premising its standards of review on the assertion that this court has stated that "[t]he [Teachers' Tenure] Act, now codified at R.C. 3319.08 through 3319.18, is to be construed in favor of teachers," quoting *State, ex rel. Rodgers,* v. *Hubbard Local School Dist. Bd. of Edn.* (1984), 10 Ohio St. 3d 136, 138, 10 OBR 458, 459, 461 N.E. 2d 1308, 1310, and *State, ex rel. Bishop,* v. *Bd. of Edn.* (1942), 139 Ohio St. 427, 439, 22 O.O. 494, 499, 40 N.E. 2d 913, 919. Although those cases did not specifically set forth any such syllabus law as a standard to be followed, it is agreed that all reasonable deference should be given to granting teachers their claimed tenured rights under the Act.

Both of such cases accordingly were considering claims of the teachers respectively involved therein pursuant to the Teachers' Tenure Act. This court reasonably concluded that under the circumstances in those cases the teachers had qualified for their continuing contracts. Under such circumstances, where the teachers were seeking recognition of their tenure, this court held that the Teachers' Tenure Act should be " 'liberally construed in favor of teachers, who constitute the class designated to be its primary beneficiaries.' "[4] (Emphasis deleted.) *Id.*

However, we have an entirely different situation here. The school board is not attempting to deny Catherine Phillips her tenured status, nor is the school board attempting to deny Phillips her continuing contract rights. The board is merely proceeding under the law to *suspend* Phillips from her

---

[4] The majority opinion also intimates that it is Ohio law that R.C. 3319.17 must be "construed narrowly against boards of education," citing to *State, ex rel. Kohr,* v. *Hooker* (1958), 106 Ohio App. 1, 4, 6 O.O. 2d 269, 270, 152 N.E. 2d 788, 791. It must be pointed out that this is not a pronouncement from this court, but a court of appeals. More importantly, such case was specifically not dealing with the construction of R.C. 3319.17, but dealt, *inter alia,* with R.C. 3307.37, which relates to the termination of employment of a teacher for superannuation.

teaching employment for a period of time because the need for her services has been eliminated due to an evidenced decrease in enrollment.

The broad question here is not whether the teacher involved was denied her tenured status, but whether the school board, under the circumstances, acted reasonably in reducing the size of its professional staff to meet the exigencies of the time, which involved a decline in enrollment over a period of years. The fact pattern and the issues are familiar in that they were presented and answered by this court in *Dorian* v. *Euclid Bd. of Edn.* (1980), 62 Ohio St. 2d 182, 185, 16 O.O. 3d 208, 211, 404 N.E. 2d 155, 158, where this court found:

"The trial court found that enrollment had dropped 22 percent, from 11,363 students in 1965 (appellee's first year as school psychologist) to 8,850 in 1975-76, and that the acts of the Euclid Board of Education concerning appellee had been done in good faith. These findings showed that it was reasonable for the board to suspend appellee due to decreased enrollment under R.C. 3319.17."

Here, as stated, the fact pattern regarding the decline in attendance or average daily membership as found by the trial court, and the court of appeals, is similar to that as found in *Dorian.* The evidence here relative to the district's pupil enrollment, as found by the lower courts in reliance upon the testimony received, was:

| 1976 | 1977 | 1978 | 1979 | 1980 |
|------|------|------|------|------|
| 1592 | 1555 | 1530 | 1458 | 1374 |

| 1981 | 1982 | 1983 | 1984 | 1985 |
|------|------|------|------|------|
| 1343 | 1331 | 1257 | 1237 | 1235 |

This constitutes a twenty-two percent decline in a period of ten years in the pupil enrollment for the entire district. In that same period, the high school enrollment decreased from 547 to 436, a decrease of twenty percent. In the department in which the appellant was employed, the decrease in enrollment in the nine-year period immediately preceding the suspension of her contract was from 172 to between 112 and 96, a decrease of between thirty-five and forty-four percent. And in the appellant's shorthand classes the decrease in the nine-year period immediately preceding the suspension was from 32 to 9, a decrease of about seventy-two percent.

Appellant argues, and the majority here adopts the premise, that the elimination of the course which she had been teaching does not present a statutory condition under R.C. 3319.17 for the suspension of her continuing contract, citing *State, ex rel. Cutler,* v. *Pike Cty. Joint Area Vocational School Dist.* (1983), 6 Ohio St. 3d 138, 6 OBR 195, 451 N.E. 2d 800. As to *Cutler,* appellant and the majority are basically correct, because in that case there was no evidence of decreased enrollment, but only that of the elimination of a course for which the teacher had not been certified. Here, however, the appellant was not suspended because the shorthand courses were simply discontinued. Rather, the courses had been discontinued because in the year immediately prior to the suspension there were only nine shorthand students, a substantial decrease in the prior enrollments.

Faced with steadily declining enrollment figures over a nine-year period, the appellee board acted as it is authorized to do under R.C. 3319.17. As this court expressly stated in *Dorian, supra,* at 184, 16 O.O. 3d at 210, 404 N.E. 2d at 158:

"In order to give boards of education the necessary flexibility, the

General Assembly enacted a section wholly distinct from R.C. 3319.16, the section normally used for the termination of continuing contracts. R.C. 3319.17 terms the removal a suspension and grants teachers the right of restoration to continuing service status when teaching positions become available in positions for which they are or become qualified. It balances the needs of the school system with the rights of the teacher who holds the continuing contract. No stigma is attached and a hearing is not necessary."

The views expressed in *Dorian* were echoed three years later in *Bohmann* v. *Bd. of Edn.* (1983), 2 Ohio St. 3d 136, 139, 2 OBR 683, 686, 443 N.E. 2d 176, 178-179, as follows:

"The General Assembly, in enacting R.C. 3319.17, recognized the need to give a board of education flexibility in decreasing the number of teachers in its employ due to circumstances beyond the board's and teachers' control. The decision of this court today reflects this spirit, for it properly preserves the flexibility a board of education needs in dealing with changing staffing requirements."

The need for flexibility in the handling of school affairs would appear to be greater today than ever before. The materials submitted by the *amicus* Ohio School Boards Association inform us that the ten-year decline in enrollment which was experienced by the South Range Local Schools was not an isolated situation. *Amicus* states that statewide enrollment figures for the period from 1976 to 1986 show a total decline in enrollment from 2,287,275 to 1,793,965, an approximate twenty-two percent drop which was the same as experienced by South Range.

The *amicus* draws our attention to the fact that the need for flexibility is especially important in light of the serious financial condition of many school districts, with many seeking assistance from the emergency school advancement fund established by R.C. 3317.63. These financial pressures are often exacerbated by declining enrollments, in that the school foundation program distributes state funds to public schools according to their average daily membership (ADM).

The need for flexibility existed here, and both lower courts here cited and relied upon *Dorian* as the basis for their holdings. The same factual situation existed, and the same legal issue was presented.

The lower courts properly followed this court's statement of law in *Dorian,* and recognized the fact of life that like declining populations in communities, school districts are rarely faced with an abrupt, substantial fall in enrollment. In virtually all cases, the decline takes place over a period of several years. Hence, the legislature did not specify a time in which the decrease must occur, but left boards of education with what this court has termed "flexibility" in that regard.

The law of Ohio as previously pronounced by this court is clearly contrary to the conclusions reached here by the majority relying, in the main, upon the law as cited from other states. The lower courts correctly applied the law of Ohio to the facts presented, and this court should uphold their judgments. The majority, having plowed new and erroneous law, requires that I dissent therefrom.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.

WRIGHT, J., dissenting. I must respectfully dissent from the decision of today's majority which significantly

limits the statutorily granted powers of local boards of education.

R.C. 3319.17 provides in pertinent part:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. * * *"

I agree with the majority's analysis to the extent it identifies three requirements before a board may reduce its teaching force pursuant to R.C. 3319.17: one of the reasons enumerated therein must exist, the reduction must be made "by reason of" one of those criteria, and the reduction must be reasonable. I disagree with the majority's conclusion, however, that these three requirements were not satisfied in the present case.

The record shows a decrease in pupil enrollment in the South Range Local School District from 1,592 in 1976 to 1,235 in 1985, and in the South Range High School (in which appellant taught) from 547 in 1976 to 436 in 1985. There was no decrease, however, between 1984 and 1985. Appellant was suspended in 1985.

The majority holds that appellant's suspension was not by reason of a decline in enrollment because enrollment in the district and in the high school "had ceased to decline in the year of suspension." By requiring that a decline occur in the actual year of suspension, the majority greatly limits the flexibility given boards of education by the General Assembly in R.C. 3319.17. See *Dorian* v. *Euclid Bd. of Edn.* (1980), 62 Ohio St. 2d 182, 184, 16 O.O. 3d 208, 210, 404 N.E. 2d 155, 158.

The inquiry as to whether a "decline" in enrollment has occurred in a school district logically requires a comparison of the current year's enrollment with the enrollment of past years. In *Dorian, supra,* the trial court found a twenty-two percent decline in enrollment over the ten-year period preceding the reduction. *Id.* at 185, 16 O.O. 3d at 211, 404 N.E. 2d at 158. There was no specific finding of a decline during the particular year of the reduction, nor is there any indication in the opinion of this court that such a decline is required by R.C. 3319.17.

The majority's decision to limit a school board's inquiry to enrollment changes for a single year is, in my view, both shortsighted and unwise. For example, a slight decline in enrollment in a particular year may not warrant a reduction in teaching forces, particularly where enrollment in the district over the previous decade had significantly increased. Conversely, where, as in this case, a steady decline in enrollment over a ten-year period is experienced, a decision to reduce teaching forces may be warranted notwithstanding that such decision is made in a year when the decline has leveled off. In effect, the majority decision will encourage school boards to act quickly to reduce their numbers of teachers whenever there is a decline in enrollment, large or small, during a particular year, since they can no longer wait until enrollment has leveled off before making informed decisions concerning appropriate staff levels. This effect is obviously contrary to the spirit of the Teachers' Tenure Act. In my view, it is in the interest of both teachers and school boards that staff reduction decisions not be made hastily.

Rather than limiting the discretion of school boards, this court should, as it has in the past, apply the plain

language of R.C. 3319.17, which refers to a "decreas*ed*" and not a "decreas*ing*" enrollment of pupils.

For the foregoing reasons, and because I believe the appellee's suspension of appellant's contract was a "reasonable reduction" in light of the significant decline in enrollment within the district, I would affirm the judgment of the court of appeals. Accordingly, I respectfully dissent.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.