## Cuyahoga Falls Education Association

v.

## Cuyahoga Falls City School District

[Cite as 3 AOA 229]

Case No. 14324

Summit County, (9th)

Decided May 4, 1990

Ronald G. Macala and Anne Piero Silagy, Attorneys at Law, The Belden/Whipple Bldg., 4150 Belden Village St., Suite 102, P.O. Box 35186, Canton, OH 44735, for Plaintiff.

G. Frederick Compton, Jr. and R. Brent Minney, Attorneys at Law, 565 Wolf Ledges Pkwy., P.O. Box 2020, Akron, OH 44309, for Defendant.

CIRIGLIANO, J.

Appellant, Cuyahoga Falls School District Board of Education (Board), appeals from the decision of the trial court in favor of the appellee, Cuyahoga Falls Education Association (Association). The trial court found that the Board abused its discretion and acted contrary to the Board's obligations under the collective bargaining agreement and statutory law as set forth in R.C. 3319.17 when it implemented reduction in force (RIF) procedures to suspend the limited contracts of twenty-two teachers. Injunctive relief and back pay were granted. We reverse and remand.

*Facts*

On January 1, 1985, the Board and the Association entered into a collective bargaining agreement. The parties stipulated that this agreement was in full force and effect at all times relevant to this action.

Article XII of the collective bargaining agreement sets forth the procedures by which the Board may effectuate a reduction in force and when such a reduction may occur. Article XII, in pertinent part reads as follows:

"(A) *Reduction in Force:*

"1. Teachers shall not be discharged or laid off pursuant to a necessary reduction in personnel unless there is a decrease in the number of students enrolled in the school district or there is a decrease in the revenues of the school district.

"2. The School Board shall notify and consult with the Association President regarding the nature of and specific reasons for any anticipated staff reduction at least sixty (60) days before any non-renewal notices are mailed.

"3. Teachers whose jobs are in jeopardy shall be notified of the anticipated layoff in writing not later than April 1.

"4. When a reduction in staff is deemed unavoidable, such reduction will not be effectuated until the beginning of the following school year, unless there is an appropriate reduction as a result of a resignation of a staff member.

"5. The order of reduction shall be according to total seniority in the district applied to the teaching area currently assigned and contract status.

"6. Provisions.

"* * *.

"j. The official date for a teacher being placed on RIF shall be the date of official notification of the Board of Education action delivered by the Director of Personnel or his/her designee."

In compliance with the dates and mechanical procedures outlined in the collective bargaining agreement, the Board notified twenty-two teachers holding limited contracts that they were to be discharged or laid off. The Board determined that declining enrollment in the district made the decision to implement the reduction in force procedures unavoidable.

The Association, on behalf of the teachers, filed a complaint against the Board that the reduction in force was not necessary and in violation of R.C. 3319.17 and Article XII of the collective bargaining agreement. In is amended complaint, the Association claimed that Board action relevant to the contract of another teacher, Stanley Sipka, under continuing contract was improper. That cause of action has already been addressed by this court under a separate appeal. *Cuyahoga Falls Edn. Assoc.* v. *Cuyahoga Falls City School Dist. Bd. of Edn.* (Sept. 27, 1989), Summit App. No. 14035, unreported. The amended complaint also restated the cause of action relating to the discharge or layoff of the twenty-two teachers. Whether the Board properly discharged or laid off these twenty-two teachers is the issue before this court.

At the trial court, evidence was presented to establish that the official annual student enrollment in the school district for the 1983-84 school year was 6,564. The Board employed 356 teachers. These figures were taken from the "October" count which is required by R.C. 3317.03. The October counts for the ensuing years and number of teachers employed by the Board from October 1983 through and including October, 1988 are as follows:

| Year | Enrollment | Teachers |
| --- | --- | --- |
| 1983 | 6564 | 356 |
| 1984 | 6358 | 369 |
| 1985 | 6251 | 382 |
| 1986 | 6110 | 384 |
| 1987 | 6036 | 386 |
| 1988 | 6087 | 360 |

In October 1987, the Board commissioned Dr. Bernard Hatch from the State Department of Education to conduct a study of the district's operation. Dr. Hatch concluded that the enrollment in the district had stabilized.

In August, 1988 and before the 1988 October count, the Board recalled eight of the teachers affected by the reduction in force. Others were removed from the recall list for various reasons. As of the beginning of the 1989-90 school year, five teachers remained on the recall list.

The issue before the trial court and before this court relates to the interpretation of the collective bargaining agreement. The trial court found that Article XII of the collective bargaining agreement was patterned after R.C. 3319.17. Based on this finding, the trial court looked to *Phillips* v. *South Range Local School Dist. Bd. of Edn.* (1989), 45 Ohio St. 3d 66 to interpret the terms of the collective bargaining agreement. The *Phillips* court held that:

"R.C. 3319.17 is a special statue which can be invoked on the basis of declining enrollment only when there is an *actual continuing* decline in enrollment. It applies in those situations where a decline in enrollment exists." (Emphasis added). *Id.* at syllabus.

In reliance on its interpretation of *Phillips*, the trial court found that the:

"[c]essation of a decline in enrollment makes a difference. It removes the emergency. The Board must demonstrate by clear and convincing evidence that its action to continue with a RIF policy was the direct result of a continuing decline in enrollment and that the number of the reduction in teacher staff was reasonable. This it has failed to do. The figures submitted show that the student enrollment between 1987 and 1988 actually increased by 1 percent. The number of teachers was reduced by 9.3 percent. The court finds this to be an unreasonable reduction."

The trial court arrived at its findings through application of R.C. 3319.17 to the collective bargaining agreement. R.C. 3319.17 reads, in pertinent part, as follows:

"When by reason of decreased enrollment of pupils, return to duty of regular teachers after leaves of absence, or by reason of suspension of schools or territorial changes affecting the district, a board of education decides that it will be necessary to reduce the number of teachers, it may make a reasonable reduction. In making such reduction, the board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools who shall, within each teaching field affected, give preference to teachers on continuing contracts and to teachers who have greater seniority. Teachers, whose continuing contracts are suspended, shall have the right of restoration to continuing service status in the order of seniority of service in the district if and when teaching positions be-

come vacant or are created for which any of such teachers are or become qualified."

In applying the statute, the trial court held, as did the *Phillips* court, that R.C. 3319.17 is an emergency measure to be narrowly construed against the Board. In its finding and conclusion the trial court held:

"In order to determine that the Board properly applied Article XII - RIF according to the CBA terms, this Court must first find that the RIF was made by reason of a decrease in enrollment and must then find that the reduction in force was reasonable. It is the finding of the Court that the Board has failed to meet these requirements that the reduction was unreasonable and that the Board has therefore abused its discretion.

"The Court finds that in the year of the RIF policy implementation there was not a decline in student enrollment and further finds that there was in fact an increase in enrollment."

The trial court enjoined the Board from continuing the implementation of the RIF policy which the Board approved at its April, 1988 meeting and ordered, to recall all teachers currently remaining on layoff status. The trial court also ordered the Board to pay all teachers on RIF back pay for time lost and to pay the costs of this action.

On appeal, the Board assigns two errors. We will address them together as they are interrelated in terms of our analysis and conclusions.

### ASSIGNMENTS OF ERROR

"I. The trial court committed prejudicial error when it based its interpretation of the provisions of the collective bargaining agreement upon *Phillips* v. *South Range Local School Dist. Bd. of Edn.*, 45 Ohio St. 3d 66 (1989), and the construction and interpretation of O.R.C. Section 3319.17 provided therein.

"II. The trial court committed prejudicial error when it found that the appellant's action to reduce its staff was an abuse of discretion and contrary to the appellant's obligations under Article XII of the collective bargaining agreement."

The Board contends that the construction and interpretation given a statute cannot control the interpretation of a provision of a collective bargaining agreement negotiated in accordance with Chapter 4117 of the Ohio Revised Code. The Board challenges the trial court's reliance on the October, 1988 enrollment figures and its finding that enrollment increased at the time of the RIF. The Board also contends that to apply the statutory requirement of reasonableness to a reduction was improper especially since the trial court erred in its calculations regarding the reduction.

In response, the Association argues that the trial court properly looked to case law interpreting R.C. 3319.17 to determine the proper application of that agreement to the facts because as the Association seeks to persuade us, that collective bargaining agreement is patterned after the statute. The Association urges us to find any error harmless regarding the trial court's calculation especially in light of the trial court's finding that the Board's action to reduce its staff was contrary to its obligations under Article XII.

In the companion case to this action, this court construed Article XII, Section A (6)(c) as it applied to the facts then before us. *Cuyahoga Falls Edn. Assoc.* v. *Cuyahoga Falls City School Dist.* (Sept. 27, 1989), Summit App. No. 14035, unreported. That section reads, in pertinent part as follows:

"No new teacher shall be employed by the Board of Education while there are teachers unemployed as a result of staff reductions who are certificated for the vacancy. Teachers on the recall list shall be recalled in order of seniority for vacancies developing within the area from which department or a certificated area of instruction for which there is no recall list, reduced teachers holding proper certification shall be recalled in that area."

Although our language may have been somewhat overbroad and subject to misinterpretation, we stated that the collective bargaining agreement was patterned after R.C. 3319.17. However, if one carefully reads the opinion, it can be seen that this court addressed only that section of the collective bargaining agreement as it applied to a teacher holding a continuing contract and the order of recall as it relates to a seniority and filling a vacancy by a person holding proper certification in finding that the collective bargaining agreement was patterned after R.C. 3319.17. In fact, Article XII, Section A (5)(e) of the collective bargaining agreement mandates that continuing contract teachers shall be reduced according to R.C. 3319.17. Any expansion of our reasoning in the companion case as it related to our interpretation of Article XII Section A (6)(c) is improper under the facts of this case.

The parties agree that the collective bargaining agreement was in effect at all times relevant to this action. The parties have negotiated an agreement regarding the reduction in force

of teachers holding limited contracts. The collective bargaining agreement controls the manner in which the reduction in force must take place in this school district. *Lilley* v. *Cuyahoga Falls City School Dist. Bd. of Edn.* (June 4, 1986), Summit App. 12489, unreported. When the parties have negotiated an agreement as permitted under Chapter 4117, they stand on equal footing with one another. As such, to construe the agreement narrowly against one party would be improper. See e.g., *State, ex. rel Rollins,* v. *Cleveland Hts. - University Hts. Bd. of Edn.* (1988), 40 Ohio St. 3d 123.

Under the facts of this case, it is the collective bargaining agreement, not R.C. 3319.17 which controls. It was error for the trial court to rely on *Phillips* and the construction and interpretation of R.C. 3319.17 provided therein.

When turn now to the task before us-- the construction and interpretation of the collective bargaining agreement and its application to the facts before us. The determination of this action hinges on when the reduction in force provisions became effective, when a determination that enrollment had declined so as to permit and the Board to deem that a reduction is unavoidable has occurred and when the Board may effectuate a reduction.

The collective bargaining agreement reads in pertinent part as follows:

"*Reduction in Force:*

"1. Teachers shall not be discharged or laid off pursuant to a necessary reduction in personnel unless there is a decrease in the number of students enrolled in the school district or there is a decrease in the revenues of the school district.

"2. The School Board shall notify and consult with the Association President regarding the nature of and specific reasons for any anticipated staff reduction at least sixty (60) days before any non-renewal notices are mailed.

"3. Teachers whose jobs are in jeopardy shall be notified of the anticipated layoff in writing not later than April 1.

"4. When a reduction in staff is deemed unavoidable, such reduction will not be effectuated until the beginning of the following school year, unless there is an appropriate reduction as a result of a resignation of a staff member."

The Board urges us to find that the decline in enrollment as evidence by the October, 1987, figure which determines the student enrollment for the 1987-88 school year is the relevant enrollment figure in determining whether the Board's action is in accord with the collective bargaining agreement. The Association contends that the agreement which it understands to have negotiated requires the Board to use the student enrollment figures for the 1988-89 school year. The Association claims that enrollment did not decline and in fact increased for the 1988-89 school year. The Association also directs us to the report prepared by Dr. Hatch wherein he stated that student enrollment had stabilized.

The collective bargaining agreement provides in Article XII Section (A) (6) (j) that:

"The Official date for a teacher being placed on RIF shall be the date of official notification of the Board of Education action delivered by the Director of Personnel or his/her designee."

In this case and in compliance with the notice requirements set forth in the agreement, the teachers were placed on RIF on or before April 30, 1988. At that time, there were no enrollment figures available for the 1988-89 school year. The only data available to the Board was provided by Dr. Hatch which suggested the possibility that the student population had stabilized. However, to ensure compliance with the collective bargaining agreement, it was the figures from the October 1987, count which were relevant to the Board's determination that a reduction in force was unavoidable.

Once the Board has deemed the reduction in staff unavoidable, it notifies the teachers who are to be in laid off. The collective bargaining agreement then provides that the teachers will not be laid off until the beginning of the following school year. The Association correctly argues that the terms of the collective bargaining agreement do not allow for the discharge or layoff of teachers unless there has been a decrease in the enrollment of the district. According to the Association's position, the Board may implement the procedures but if there is no decrease in enrollment for the following school year, no layoffs or discharges can occur. Essentially, the Association argues that the Board must wait until October of the school year following the year in which it notified the teachers of the potential layoff before it can actually lay off the teachers. The Association adheres to this position in spite of the fact that the collective bargaining agreement provides that teacher assignments are made on or about August 1 and are effective for one year. To adopt the Association's construction of the agreement would require a district to begin its year with uncertainty as to schedules, classroom composition, and teacher assignments. If the October count reveals a decrease, then and

only then, according to the Association, could the Board lay off the teachers. We find that, in light of the unambiguous language of the collective bargaining agreement, that the Association's position is untenable.

Applying the terms of the agreement to the facts of this case, we find that the twenty-two teachers were placed on RIF on or before April 30, 1988. Once placed on RIF, the recall provisions of Article XII specify the obligations of the Board as they relate to recalling those teachers placed on RIF and the obligations of those teachers on RIF. Unless recalled according to the procedures set forth in Article XII, a teacher who was placed on RIF on or before April 30, 1988, will be discharged or laid off at the beginning of the 1988-89 school year.

Based on the foregoing reasons we sustain the Board's two assignments of error and reverse the decision of the trial court. This cause is remanded for proceedings consistent with this opinion.

*Judgment reversed and*
*cause remanded.*

CACIOPPO, P.J., and HAYES, J., concur.

Hayes, J., Judge of the Domestic Relations Court of Portage County, sitting by assignment pursuant to Article IV, Section 5(A) (3), Constitution.