DECISION
{¶ 1} Plaintiff-appellant, Douglas Mink, appeals the trial court's entry of summary judgment in favor of defendants-appellees, Great Oaks Institute of Technology and Career Development Board of Education and Great Oaks Institute of Technology and Career Development District (collectively "Great Oaks"). He had asserted that Great Oaks improperly suspended his limited contract for the 2003-2004 school year due to a reduction in force. We affirm the trial court's judgment.
I. Great Oaks's Programs
 {¶ 2} Great Oaks is a joint vocational school comprised of four campuses that teach eleventh- and twelfth-grade students technical and vocational skills, as well as academic subjects. It is a "school of choice," meaning students must choose to go there. Thus, it cannot predict its enrollment for the following academic year until late spring or early summer after tenth-grade students have applied and committed to attending one of the Great Oaks campuses.
 {¶ 3} Great Oaks's core focus is on teaching students on its four campuses, where its concentrates its operations. It teaches both vocational and academic classes to students enrolled at the campuses. Students are generally enrolled for an entire day of classes, and Great Oaks is responsible for teaching all required classes for these students.
 {¶ 4} Besides the core programs on its campuses, Great Oaks participates in satellite workforce development programs in schools throughout a twelve-county area. In these programs, school districts invite Great Oaks to send a teacher to teach one or two vocational classes on the host school's campus. The host school remains the home school for the students enrolled there. In contrast to the programs on its own campuses, Great Oaks teaches only vocational classes through these satellite programs. The host school remains responsible for all academic and other required classes.
 {¶ 5} Great Oaks also participates in limited non-workforce development programs and services through the satellite programs at various schools. It administers these programs in substantially the same way as the satellite workforce development programs.
II. Great Oaks's Funding
 {¶ 6} The method of calculating enrollment and funding from the state of Ohio for Great Oaks's satellite programs is substantially different from the calculation for students enrolled on the campuses. Great Oaks receives full credit for enrollment and funding purposes for each student enrolled on the campuses. But it receives only partial credit for each student enrolled in a satellite program. For example, while Great Oaks receives 100% of the funding and enrollment credit for a student enrolled on one of its campuses, it may receive only 12% for a student enrolled in a satellite program. The host school where the satellite program is taught receives all remaining funding and enrollment credit.
 {¶ 7} The percentage of funding and enrollment credit that Great Oak receives for students enrolled in the satellite programs varies. Due to this partial and variable funding credit, Great Oaks calculates and submits a full-time equivalency ("FTE") number for each year to the state of Ohio to show its enrollment. The FTE number equates satellite students and campus students for funding purposes, and the state uses that number to calculate the school's funding for the year. For example, if Great Oaks receives 10% of the funding for each student enrolled in a satellite program, then ten satellite students equals one campus student for FTE purposes.
III. Great Oaks's Reduction-in-Force Policy
 {¶ 8} Several methods exist by which a Great Oaks's teacher may leave its employ. A suspension due to a reduction in force ("RIF") is not performance-based. The district implements an RIF when enrollment does not support a particular teaching position. During an RIF, the district suspends rather then terminates a teacher's contract. It places the teacher on a recall list, and if enrollment later supports the position, it recalls the teacher.
 {¶ 9} Great Oaks's RIF policy is based upon R.C. 3319.17 and sets forth the circumstances under which Great Oaks may institute an RIF and suspend teachers' contracts. It specifically provides that Great Oaks may institute an RIF due to declining enrollment. This policy was in effect during Mink's employment, although he never saw it implemented while Great Oaks employed him.
IV. Mink's Employment with Great Oaks
 {¶ 10} Great Oaks hired Mink under a limited contract of employment in February 2003, for the remainder of the 2002-2003 school year. That contract expired on August 31, 2003. Mink taught social studies on the Scarlet Oaks campus. He was certified to teach social studies, history, and political science. Because he was not certified to teach vocational classes, he could not teach in the satellite programs.
 {¶ 11} In April 2003, Claire Patterson, Great Oaks's human resources director, notified Mink that Great Oaks would probably not offer him a contract for the 2003-2004 school year due to declining enrollment. But because it had not yet received all applications for enrollment, it approved a limited contract for Mink that would have commenced on September 1, 2003, and terminated on August 31, 2004.
 {¶ 12} Patterson later notified Mink that Great Oaks had implemented an RIF due to declining enrollment, and that it would suspend his 2003-2004 contract. The school board voted to suspend his contract on May 14, 2003. It notified Mink in a certified letter dated May 15, 2003.
V. The Decline in Enrollment
 {¶ 13} Mink contended that information from the Ohio Department of Education showed that enrollment actually increased from 5,413 for the 2002-2003 school year to 5,665 for the 2003-2004 school year. But the record shows that (1) Great Oaks's overall FTE numbers declined by 5.34 units; (2) campus enrollment declined by 109 students; (3) enrollment in its satellite workforce development programs declined; and (4) enrollment in the social studies program at Scarlet Oaks in which Mink taught declined by 63 students.
 {¶ 14} The only area in which Great Oaks experienced an increase in the raw number of students was in its satellite non-workforce development programs. The total raw-number enrollment in all satellite programs increased by approximately 675 students from the 2002-2003 to the 2003-2004 school year. That increase was solely attributable to the increase in enrollment in the non-workforce development satellite programs. But Great Oaks receives only partial funding and enrollment credit for each satellite student. Great Oaks experienced declining enrollment in all other areas and the increase in non-workforce development programs did not offset the decreases in other areas for determining FTE.
 {¶ 15} Due to the overall decline in enrollment from the 2002-2003 to the 20032-004 school year, Great Oaks suspended six teachers' contracts. It eliminated nineteen teaching and administrative positions through a variety of methods. In the following school year, the continuing decline in enrollment forced Great Oaks to continue suspending contracts.
VI. Mink's Appeal
 {¶ 16} In his sole assignment of error, Mink contends that the trial court erred in granting summary judgment in favor of Great Oaks. He argues that R.C. 3319.17(B) requires a reduction in the actual number of pupils throughout a school district, not in FTE, before a school district can claim a reduction in force to dismiss teachers. He also argues that a school district must notify teachers that their contracts are being suspended due to an RIF before the April 30 deadline set out in R.C. 3319.11. This assignment of error is not well taken.
VII. Application of R.C. 3319.17
 {¶ 17} Statutory interpretation is a matter of law for the court. In re Protest of Brooks, 155 Ohio App.3d 370,2003-Ohio-6348, 801 N.E.2d 503, ¶ 34. R.C. 3319.17 is a special statute that enables a board of education to suspend teachers' contracts for a decline in enrollment, totally unrelated to any teacher's performance. Phillips v. S. Range Local Sch. Dist. Bd.Of Ed. (1989), 45 Ohio St.3d 66, 67, 543 N.E.2d 492. It provides in pertinent part, "When, for any of the following reasons that apply to any city, exempted village, local, or joint vocational school district * * *, the board decides that it will be necessary to reduce the number of teachers it employs, it may make a reasonable reduction: * * * in the case of any city, exempted village, local or joint vocational school district, decreased enrollment of pupils in the district." R.C.3319.17(B)(2).
 {¶ 18} School boards should only use R.C. 3319.17 to suspend teacher contracts when an actual and current decline in enrollment exists at the time of the reduction of the number of teachers. Phillips, supra, at 69, 543 N.E.2d 492. Nevertheless, the legislature enacted R.C. 3319.17 to give boards of education flexibility in adjusting staffing to meet their needs. Id. at 68,543 N.E.2d 492; Ott v. Buckeye Local Sch. Dist. Bd. of Ed.
(Aug. 27, 1986), 9th Dist. No. 1494. A board has broad discretion in determining what will be a reasonable reduction in force.Wolfe v. Bd. of Ed. of the Lawrence Cty. Jt. Voc. Sch. Dist.,150 Ohio App.3d 50, 2002-Ohio-6067, 779 N.E.2d 780, ¶ 8.
 {¶ 19} R.C. 3319.17 does not define the term "decline in enrollment." Nothing in the statute requires a school board to reduce only the specific programs that have lost students, but neither does it prohibit considering only those programs. SeeWolfe, supra, at ¶ 8; State ex rel. Van Dorn v. Mt. GileadExempted Vill. Sch. Dist. Bd. of Ed. (1992), 78 Ohio App.3d 238,241-242, 604 N.E.2d 239; Bennett v. Bd. of Ed. Of the LorainSch. Dist. (1985), 23 Ohio App.3d 136, 137, 491 N.E.2d 742.
 {¶ 20} Mink contends that only the actual number of pupils is the appropriate measure to determine a decline in enrollment. We disagree. For a district that must measure its enrollment in terms of FTE for funding purposes, using the FTE figures is an appropriate and reasonable method for determining whether a decline in enrollment has occurred. To hold otherwise would be to ignore the economic reality of the partial and variable funding credits that Great Oaks receives for the satellite program students and would take away its flexibility to meet staffing needs that the statute confers. It would also be inserting words in the statute that are not present, which this court may not do. See State ex rel. Hlynsky v. Osnaburg Local Sch. Dist. Bd. ofEd. (1984), 11 Ohio St.3d 194, 197, 464 N.E.2d 569.
 {¶ 21} Further, the board could have appropriately used the number of students enrolled on the campuses or in the social studies program on its campuses as a measure of enrollment. SeeVan Dorn, supra, at 241-242, 604 N.E.2d 239; Bennett, supra, at 137, 491 N.E.2d 742. Great Oaks teaches academic classes only on its campuses, and the campuses had suffered a decline in the number of students. Because of that decline, Great Oaks had to suspend the contracts of the academic teachers because generally those teachers were not certified to teach vocational subjects and could not be transferred to satellite programs, which was precisely what occurred with Mink. Great Oaks had the flexibility to consider those issues when determining whether a reduction in force was necessary. Thus, our review of the record shows a decline in enrollment necessary to justify a reduction in force.
VIII. Application of R.C. 3319.11
 {¶ 22} Mink also argues that even if Great Oaks properly suspended his contract, it did not notify him of the suspension by April 30 as required by R.C. 3319.11. R.C. 3319.11(E) provides that "[a]ny teacher employed under a limited contract, and not eligible to be considered for a continuing contract, is, at the expiration of such limited contract, considered reemployed under the provisions of this division * * * unless * * * the employing board, acting upon the superintendent's written recommendation that the teacher not be reemployed, gives such teacher written notice of its intention not to reemploy such teacher on or before the thirtieth day of April." Under the express terms of this statute, a school board must reemploy any teacher who does not receive notice of the board's intent not to renew that teacher's contract by April 30. Kiel v. Green Local Sch. Dist. Bd. of Ed.
(1994), 69 Ohio St.3d 149, 153, 630 N.E.2d 716.
 {¶ 23} But courts, including the Ohio Supreme Court, have held that the provisions of R.C. 3319.11 do not apply when a school district makes a reduction in force and suspends a teacher's contract under R.C. 3319.17. Hlynsky, supra, at 197,464 N.E.2d 569; Wolfe, supra, at ¶ 11; Ott, supra. The provisions of R.C. 3319.17 and 3319.11 are separate and distinct, and the school district may suspend a teacher's contract during a reduction in force as long as a decline in enrollment occurs without meeting the requirements of R.C. 3319.11. See Phillips,
supra, at 67-68, 543 N.E.2d 492; Wolfe, supra, at ¶ 11. Consequently, Great Oaks was not required to notify Minks of the suspension before April 30.
IX. Summary
 {¶ 24} Under the circumstances, we find no issue of material fact. Construing the evidence most strongly in Mink's favor, we hold that reasonable minds could reach but one conclusion — that Great Oaks properly suspended Mink's limited contract as part of a reduction in force due to a decline in enrollment. Great Oaks was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor. SeeHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46; Stinespring v. Natorp Garden Stores, Inc.
(1998), 127 Ohio App.3d 213, 215-216, 711 N.E.2d 1104. We overrule Mink's assignment of error and affirm the trial court's judgment.
Doan, P.J., Sundermann and Hendon, JJ.